**Despina SPIRIDES, Plaintiff,**

v.

**John E. REINHARDT, Defendant.**

**Civ. A. No. 77–0887.**

United States District Court, District of Columbia.

March 14, 1980.

---

Paul A. Kiefer, Kiefer & Brooks, Washington, D. C., for plaintiff.

Charles F. C. Ruff, U. S. Atty., Royce C. Lamberth, Nathan Dodell, Asst. U. S. Attys., Washington, D. C., for defendant; Judith A. Futch, Asst. Gen. Counsel, International Communication Agency, Washington, D. C., of counsel.

## OPINION

HART, District Judge.

The Court now has before it cross-motions for summary judgment filed by both plaintiff and defendant. The defendant is the Director of the United States International Communication Agency (ICA). The plaintiff is a female, naturalized citizen of the United States who worked intermittently in the District of Columbia as a foreign language broadcaster for the Greek Service, a division of the Voice of America (VOA), which is a division of ICA. Excepting certain time periods,[1] plaintiff worked from September, 1968 to November 29, 1974, pursuant to Purchase Order Vendor (POV) contracts which indicated, *inter alia*, ". . . that the Contractor (Spirides) shall perform such services as an independent contractor, and not as an employee of the (United States International Communication) Agency." Under these renewable yearly contracts, she was paid per assignment, which included four consecutive hours of rehearsals and performances as reader of foreign language broadcast of materials prepared by others for the Greek Service's radio program. *Spirides v. Reinhardt*, D.C.Cir., 613 F.2d 826 (1979). In June, 1974, with the addition of two female foreign nationals to the employee staff of the Greek Service, who both prepared and broadcast foreign language material, the Chief of the Service informed Spirides he could no longer justify the expenditure of POV funds for a female voice. Therefore, her contract was not to be renewed after its September, 1974 expiration. 613 F.2d at 827. Originally, plaintiff did not claim that she believed herself to a victim of sex discrimination. Rather, plaintiff claimed she was discriminated against on the basis of citizenship. On July 15, 1974, plaintiff wrote to Congressman Young, stating: "I am not charging that the discrimination of which I speak relates to my race, religion, ethnic origin or even to the fact that I am a woman. Quite simply, I have been discriminated against, and I am being discharged from VOA (ICA) because I am an American citizen . . . ." Administrative Record, filed April 25, 1978, at 176. Notwithstanding her original position, plaintiff's first formal complaint (with the Equal Employment Opportunity Office of ICA in October, 1974) alleged that she was a victim of sex discrimination.

On May 25, 1977, after exhausting her administrative remedies, plaintiff filed a complaint alleging unlawful termination of her employment because defendant discriminated against her because of her sex and her sex plus citizenship with respect to her right to equal employment opportunities, in violation of her rights under (1) Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* as amended by the Equal Employment Opportunity Act of 1972, 42 U.S.C. § 2000e–16 (hereinafter "the Act"); (2) Executive Order 11478 pertaining to equal employment opportunities; and (3) the Fifth Amendment to the United States Constitution.

On November 4, 1977, this Court granted defendant's motion to dismiss and denied plaintiff's motion for partial summary judgment, on the ground that plaintiff "was at all times a 'Purchase Order Vendor,' hence an independent contractor and

---

1. Excepting the periods from 1968 to 1969; October, 1970 through October, 1971; and October, 1974 through November 29, 1974.

not an employee of the United States Information Agency", as would be required to activate the protections of the Act.

On July 10, 1979, the Court of Appeals, finding "that the nature of appellant's employment status requires further evidentiary exploration" (613 F.2d at 827), vacated the grant of the motion to dismiss, left the denial of plaintiff's motion for partial summary judgment undisturbed, and remanded the case for further proceedings. Separate depositions of plaintiff and her husband were conducted in October, 1979.

It appears to this Court that, based on the affidavits, memoranda, administrative record, and the depositions of Mr. and Mrs. Spirides, there is no dispute as to material facts, and, that from the following undisputed facts, summary judgment will be granted in favor of defendant and will be denied as to plaintiff. It is clear that (I) Reviewing all of the circumstances surrounding plaintiff's work relationship in addition to the consideration of the elements of her POV contract, plaintiff was not an employee within the meaning of the Act; (II) Even if plaintiff were considered an employee under the Act, she has not made out a cognizable claim of "sex plus" discrimination.

## I.

REVIEWING ALL OF THE CIRCUMSTANCES SURROUNDING PLAINTIFF'S WORK RELATIONSHIP IN ADDITION TO THE CONSIDERATION OF THE ELEMENTS OF HER POV CONTRACT, THIS COURT FINDS THAT PLAINTIFF WAS NOT AN EMPLOYEE WITHIN THE MEANING OF THE ACT.

■ Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. as amended by The Equal Opportunity Act of 1972, 42 U.S.C. § 2000e–16, states in relevant part: "(a) All personnel actions affecting employees or applicants for employment (except with regard to aliens employed outside the limits of the United States) in military departments as defined in section 102 of Title 5, in executive agencies (other than the General Accounting Office) as defined in section 105 of Title 5 (including employees and applicants for employment who are paid from non-appropriated funds), in the United States Postal Service and the Postal Rate Commission, in those units of the Government of the District of Columbia having positions in the competitive service, and in those units of the legislative and judicial branches of the Federal Government having positions in the competitive service, and in the Library of Congress shall be made free from any discrimination based on race, color, religion, sex, or national origin."

It appears to this Court that plaintiff was not an "employee" under this provision, but rather an independent contractor during the period in question.

■ As this Court has noted before, it finds the contract language to the effect that ". . . the Contractor (Spirides) shall perform such services as an independent contractor, and not as an employee of the (United States International Communication) Agency" of some importance. It is clear that, while the designation used by the parties in a contract is not binding, it is a factor to be considered. *Mueller v. Cities Service Oil Co.,* 339 F.2d 303 (7th Cir. 1965). The Court of Appeals recognized that the contract should be accorded significant weight when it noted, "in this case, the POV contract indicates beyond question not only that the Greek Service had authority to hire appellant, but that it had authority to hire her as an independent contractor." (613 F.2d at 833). While this Court defers to the Court of Appeals rationale that "consideration of these facts alone [is] insufficient to support a finding that appellant was an independent contractor and thus beyond the scope of the Act . . ." (613 F.2d at 833), the clear contract language is only one of many indicia that the parties intended a relationship in the nature of independent contractor.

On remand, the Court of Appeals has instructed this Court to review ". . .

all of the circumstances surrounding Spirides' work relationship in addition to its consideration of the elements of her POV contract" (613 F.2d at 833). Having reviewed all of these circumstances, including those set forth in plaintiff's deposition, this Court is firmly convinced that plaintiff was not an employee under the Act, and was thus beyond the scope of its protection. There are a number of compelling indicia, in addition to the clear contract language, that suggest that plaintiff had, at all relevant times, an independent contractor relationship with the Greek Service and that she so recognized the relationship. First, plaintiff did not receive annual or sick leave. Plaintiff's deposition, at 12. Plaintiff received no retirement credits, and she had no hospitalization insurance. From April, 1954 to September, 1956 plaintiff was employed at the American Consulate in Salonika. At that time, as a true employee of the United States Government, she did receive these benefits. Plaintiff's deposition, at 5–9. Further, plaintiff knew that employees of the ICA were getting annual leave, sick leave, retirement credits and hospitalization insurance, and that she was not. Further, plaintiff was well aware that if she was an employee she was entitled to these benefits. Plaintiff's deposition, at 13. Second, the government did not make any deduction from her salary for withholding of taxes, and no Social Security payments were made on her behalf. Plaintiff was aware that, in the case of employees, the government does make deductions for withholding of taxes (Plaintiff's deposition, at 12), and that her husband was a government employee and the government was withholding taxes from him. *Ibid.* Third, the contract only required the agency to provide plaintiff with one assignment over the one-year life of the contract. Plaintiff knew that this was not the usual relationship that obtains between employer and employee. Plaintiff's deposition, at 19–20. Fourth, the payment in this contractual relationship was "per assignment." An express contract to pay by the job is always strong evidence that the relationship of employer—employee does not exist. *O'Leary*

*v. James & Wunderlich*, 192 F.Supp. 462 (D.Mont.1960), *aff'd.*, 288 F.2d 462 (9th Cir. 1961). Fifth, and very compelling, tax returns filed by plaintiff and her husband listed amounts received by plaintiff from ICA as "self-employment income." Deposition of Mr. Spirides, at 9. Tax forms filed by plaintiff and her husband stated, next to the term "Spouse's Occupation," the word "contractor" and under it "U. S. Govt., USIA." Deposition of Mr. Spirides, at 6. Further Mr. and Mrs. Spirides deducted as a business expense the cost of transportation expended to perform services as a purchase order vendor. As an employee, Mrs. Spirides could not have deducted transportation as a business expense. Mr. Spirides did not deduct his transportation to his government employment. Deposition of Mr. Spirides, at 13–14.

This Court finds that the preceding five observations, taken together with the unambiguous contract language, establishes beyond any doubt that plaintiff was not an employee under the Act, that she knew and recognized that she was not such an employee and thus was not within the scope of its coverage.

## II.

### EVEN IF PLAINTIFF WERE CONSIDERED AN EMPLOYEE UNDER THE ACT, SHE HAS NOT MADE OUT A COGNIZABLE CLAIM OF "SEX PLUS" DISCRIMINATION.

■ Plaintiff alleges that she had been discriminated against because of her sex and citizenship, and argues that this is a recognizable type of discrimination referred to as "sex plus" discrimination. In a "sex plus" case an employer does not discriminate against a protected class as a whole, but rather disparately treats a subclass within a protected class. *Phillips v. Martin Marietta Corp.*, 400 U.S. 542, 91 S.Ct. 496, 27 L.Ed.2d 613 (1971). In *Phillips*, the Court found a violation of Title VII where the employer treated women with children of preschool age differently than men in similar circumstances. In *Sprogis v. United*

*Airlines,* 444 F.2d 1194 (7th Cir. 1971) *cert. denied,* 404 U.S. 991, 92 S.Ct. 536, 30 L.Ed.2d 543 (1971), held it a violation of Title VII for the defendant to hire married male flight· attendants but not married female flight attendants. However, the "sex plus" cases advanced by plaintiff are not controlling for two reasons.

First, as has been noted in a district court case in this jurisdiction in a 1979 case involving the identical agency and only slightly different facts, "American citizenship is not such a traditional symbol (as are motherhood in *Phillips* and marriage in *Sprogis*), and is therefore. a less likely camouflage for sexual discrimination. Nor is there any factual reason to suspect that the citizenship factor operates to the greater disadvantage of women than of men." *Michalas v. Reinhardt,* C.A. 78–0920, Memorandum Opinion issued May 29, 1979, at 4. In *Michalas,* Judge Richey noted that, "while it is conceivable that such a claim could be made based on a combination of sex and citizenship" (Memorandum Opinion, at 5), plaintiff's contention that the defendant hired female aliens full time and citizens only on a purchase order vendor basis to discriminate against women is. inadequate to state a claim of "sex plus" discrimination in violation of Title VII. Given the striking parallels between *Michalas* and the instant case, principles of equity, fairness, and judicial uniformity command obedience to the *Michalas* result.

Second, even if plaintiff's "sex plus" claim were theoretically cognizable, the record reflects that defendant's failure to renew plaintiff's contract was motivated by prudent business judgment, not illegal discrimination. Plaintiff was originally engaged as a purchase order vendor in 1968 because the Greek Service sought a female voice to break the monotony of an all-male presentation. Plaintiff's deposition, at 29–32. The regular staff of the Greek Service (adapter-announcers) wrote scripts and translated before delivering their scripts over the air. In contrast, plaintiff merely provided a voice; she did not write scripts or translate. Plaintiff's deposition, at 31–34. Prior to plaintiff's termination, the Greek Service hired two female adapter-announcers who prepared their own scripts and delivered them on the air. Plaintiff's deposition, at 35. There was not a regular position in the Greek Service for a person who could only read but could not prepare scripts. Plaintiff's deposition, at 57. The only reason plaintiff was engaged as a purchase order vendor, even though she could read but not prepare scripts, was that the Greek Service wanted a female voice; and purchase order vendors are engaged when regular staffers cannot provide a particular service. Plaintiff's deposition, at 61. With the advent of the additional regular staff people who possessed the broader range of talent needed by the Greek Service, there was no longer a need to specifically buy a female voice. Plaintiff's deposition, at 60. From 1968 to 1974, plaintiff never made it known that she was interested in full time employment; nor that she was interested in a position as an adapter-announcer. Plaintiff's deposition, at 49–51. She did not have a background in journalism. *Ibid.* . Plaintiff was asked whether she wanted to take the test for full time employment and she decided not to avail herself of this opportunity for adapter-announcer employment. Plaintiff's deposition, at 56–57. With the arrival of the two female staff members by July of 1974, there was no longer a need for plaintiff's services. It was this situation "that led the Chief of the Greek Service to notify Mrs. Spirides last Spring that he probably would not be able to continue to justify the expenditure of purchase order funds for an additional female voice." Letter from Acting ICA Director Eugene P. Kopp, October 2, 1974. Exhibit 3 to Plaintiff's deposition. Examined in their entirety, there can be no doubt that defendant's actions reflected sound, prudent, and sensible business judgment. There are no material facts in dispute which could possibly substantiate a claim of illegal discrimination.

On the basis of the pleadings, depositions, and oral argument, no fact material to any of the asserted claims is in dispute. Therefore, the defendant's motion for summary

judgment will be granted; and the plaintiff's motion for summary judgment will be denied. An order in accordance with the foregoing will be issued herewith.