**Tanyah Naomi AMARNARE, Plaintiff,**

v.

**MERRILL LYNCH, PIERCE, FENNER & SMITH INC., Defendant.**

No. 83 Civ. 4742.

United States District Court, S.D. New York.

Oct. 10, 1984.

---

Tanyah Naomi Amarnare, pro se.

Mary E. Baker, Thomas W. Smith, New York City, for defendant.

1. 42 U.S.C. §§ 2000e to 2000e–17 (1982).

2. Amarnare claims that she was discharged without warning or an opportunity to respond

OPINION

EDWARD WEINFELD, District Judge.

In this action against the defendant, Merrill Lynch, Pierce, Fenner & Smith Inc. ("Merrill Lynch"), the plaintiff, Tanyah Amarnare, alleges that Merrill Lynch was her "joint employer" with Mature Temps, Inc. ("Mature Temps"), not named as a defendant, and that Merrill Lynch violated Title VII of the Civil Rights Act of 1964[1] by discharging her from her temporary job because of her sex (female), race (black), and national origin (Afro-American). She worked for Merrill Lynch as an administrative assistant for two weeks, from April 14 to April 30, 1981.

Merrill Lynch moves, pursuant to Fed.R. Civ.P. 12(b)(1), (2), and (6), to dismiss the amended complaint for failure to state a claim upon which relief can be granted and, pursuant to Rule 8(a)(2), for failure to show that the plaintiff is entitled to relief. The essence of the motion, however variously stated, is that the relationship of employer and employee did not exist between Merrill Lynch and Amarnare; that in fact the plaintiff was employed by Mature Temps, an employment agency that provides temporary personnel to business concerns such as Merrill Lynch; and that Merrill Lynch so engaged her but discharged her after two weeks because her services were unsatisfactory. In sum, Merrill Lynch claims that plaintiff worked for it as an independent contractor and that no direct employment relationship between plaintiff and Merrill Lynch was contemplated by either of them. Accordingly, it is urged that the plaintiff's claim is not covered by Title VII.

In resisting the motion, the plaintiff alleges that, although during the brief period of her service Mature Temps paid her salary, Merrill Lynch controlled her work hours, work place, and work assignments; hired, trained, and supervised her; and ultimately discharged her. She also alleges that no white male or white female was terminated in the manner she was terminated.[2] As a further and separate claim,

to the charge that her work was unsatisfactory. She also claims that she was discharged without cause.

plaintiff alleges that during the two-week period she applied for a permanent position at Merrill Lynch and was turned down because of the company's discriminatory policy against women and blacks.

Merrill Lynch and Amarnare, who appears *pro se,* have both submitted affidavits in support of their respective positions on this motion.[3] For purposes of this motion, the allegations in the amended complaint and the plaintiff's supporting affidavits must be accepted as true,[4] and no claim may be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim[s] which would entitle [her] to relief."[5] Under this stringent standard, the defendant's motion to dismiss the amended complaint must be denied with respect to both the claim of unlawful discharge and that of unlawful refusal to hire plaintiff as a permanent employee.

## THE CLAIM OF UNLAWFUL DISCHARGE

■ Title VII forbids an "employer" to engage in an "unlawful employment practice."[6] An "employer" is a person engaged in commerce who has employed fifteen or more persons during a specified period.[7] Merrill Lynch does not deny that it qualifies as an employer under this definition. As such, Merrill Lynch is forbidden by Title VII "to fail or refuse to hire or to discharge any individual, *or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment,* because of such individual's race, color, religion, sex, or national origin."[8] By its terms, this prohibition is not limited to employers who discriminate against their own employees. Indeed, it is significant that in providing a private right of action against a statutory employer Title VII does not refer to "employee" but to "the person aggrieved,"[9] a term that has been construed "as comprehending individuals who do not stand in a direct employment relationship with an employer."[10] Amarnare alleges that Merrill Lynch and Mature Temps were her joint employers.[11] This conclusion, if warranted, is sufficient to bring her action within the ambit of Title VII, though it is not necessary to do so. Even if Amarnare were an employee only of Mature Temps, she may invoke the statute on the ground that Merrill Lynch interfered with her employment opportunities with Mature Temps. The defendant's motion to dismiss must be considered on both grounds.

■ First, whether the plaintiff was an employee of Merrill Lynch for purposes of Title VII is a question of federal law.[12] The Court is required to analyze the "economic realities" of the situation "viewed in light of the common law principles of agen-

---

3. The defendant has not moved for summary judgment under Fed.R.Civ.P. 56(b) nor has it filed an accompanying statement of material facts as required by Local Rule 3(g). However, the factual assertions in the pleadings and affidavits, which in a number of instances are sharply disputed, are referred to as background information.

4. *Gardner v. Toilet Goods Ass'n,* 387 U.S. 167, 172, 87 S.Ct. 1526, 1529, 18 L.Ed.2d 704 (1967).

5. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957) (footnote omitted).

6. 42 U.S.C. § 2000e–2(a)(1) (1982).

7. *Id.* § 2000e(b).

8. *Id.* § 2000e2(a)(1) (emphasis added).

9. *Id.* § 2000e–5(f)(1).

10. *Sibley Memorial Hosp. v. Wilson,* 488 F.2d 1338, 1341 (D.C.Cir.1973).

11. Merrill Lynch and Mature Temps are not so cooperative with one another as to constitute a consolidated or integrated enterprise; as such, they are not "joint employers" under Title VII in the strict sense of that term. *See Baker v. Stuart Broadcasting Co.,* 560 F.2d 389, 391–92 (8th Cir. 1977); *Linskey v. Heidelberg Eastern, Inc.,* 470 F.Supp. 1181, 1183–84 (E.D.N.Y.1979). However, this does not mean that Amarnare could not have been an employee of both concerns simultaneously, *see Beaver v. Jacuzzi Bros., Inc.,* 454 F.2d 284, 285 (8th Cir.1972) (*per curiam* ), and her use of the term "joint employer" in the amended complaint is understood in this light.

12. *See Cobb v. Sun Papers, Inc.,* 673 F.2d 337, 339 (11th Cir.), *cert. denied,* 459 U.S. 874, 103 S.Ct. 163, 74 L.Ed.2d 135 (1982).

cy and the right of the employer to control the employee."[13] The "extent of the employer's right to control the 'means and manner' of the worker's performance is the most important factor."[14] Based on the allegations in the amended complaint and the supporting affidavits, there is no doubt that Merrill Lynch exercised complete control over Amarnare's work assignments, the means and manner of her performance, and the hours of her employment. There is no suggestion but that Amarnare was subject to the direct supervision of Merrill Lynch employees in all respects and at all times during the two-week period in which she worked for the company. It is also clear from the defendant's affidavits that Merrill Lynch had the right to discharge Amarnare and to request a replacement from Mature Temps if it found Amarnare's services unsatisfactory.

■ When an employer has the right to control the means and manner of an individual's performance, as Merrill Lynch allegedly had with regard to Amarnare, an employer-employee relationship is likely to exist.[15] Factors other than control are then of marginal importance. In this case, the only other factor Amarnare alleges is that she was paid directly by Mature Temps rather than Merrill Lynch. This factor by itself is an insufficient basis on which to characterize plaintiff as an independent contractor. None of the Title VII cases, including those cited by the defendant, supports such a characterization. In most of those cases in which the plaintiffs were held to be independent contractors, the courts emphasized that the defendants exercised no control over the means and manner of the plaintiffs' performances.[16] The courts also emphasized the presence of one or more factors such as that the plaintiff owned his own equipment, paid his own operating expenses, hired his own employees to do the work in question, had entered into a contract that described him as an independent contractor, or reported his earnings for income tax purposes as "self-

---

**13.** *Id.* at 341; *see Hickey v. Arkla Indus., Inc.,* 699 F.2d 748, 751 (5th Cir.1983); *Unger v. Consol. Foods Corp.,* 657 F.2d 909, 915 n. 8 (7th Cir.1981), *cert. granted, vacated, and remanded on other grounds,* 456 U.S. 1002, 73 L.Ed.2d 1297 (1982); *Lutcher v. Musicians Union Local 47,* 633 F.2d 880, 883 (9th Cir.1980); *Spirides v. Reinhardt,* 613 F.2d 826, 831–32 (D.C.Cir.1979).

**14.** *Spirides,* 613 F.2d at 831. The D.C. Circuit has indicated that other factors to be considered include:

> (1) the kind of occupation, with reference to whether the work usually is done under the direction of a supervisor or is done by a specialist without supervision; (2) the skill required in the particular occupation; (3) whether the "employer" or the individual in question furnishes the equipment used and the place of work; (4) the length of time during which the individual has worked; (5) the method of payment, whether by time or by the job; (6) the manner in which the work relationship is terminated, *i.e.,* by one or both parties, with or without notice and explanation; (7) whether annual leave is afforded; (8) whether the work is an integral part of the business of the "employer"; (9) whether the worker accumulates retirement benefits; (10) whether the "employer" pays social security taxes; and (11) the intention of the parties.

*Id.* at 832.

**15.** *See id.* at 831–832.

**16.** *See Gutierrez v. Aero Mayflower Transit Co.,* 22 Fair Empl.Prac.Cas. (BNA) 447, 448–49 (N.D. Cal. Apr. 27, 1979); *Takeall v. Werd, Inc.,* 23 Fair Empl.Prac.Cas. (BNA) 947, 948 (M.D.Fla. Mar. 8, 1979); *Smith v. Dutra Trucking Co.,* 410 F.Supp. 513, 516–17 (N.D.Cal.1976), *aff'd,* 580 F.2d 1054 (9th Cir.1978) (mem.); *Mathis v. Standard Brands Chem. Indus., Inc.,* 10 Empl. Prac.Dec. (CCH) ¶ 10,306, at 5246–47 (N.D.Ga. Feb. 20, 1975).

In *Spirides v. Reinhardt,* 486 F.Supp. 685, 687–88 (D.D.C.1980), the district court did not mention control in finding that plaintiff was an independent contractor but emphasized the parties' contract, which described plaintiff as such, and plaintiff's tax returns, which listed her earnings as "self-employment income." In *Dumas v. Town of Mount Vernon,* 436 F.Supp. 866, 870, 872–73 (S.D.Ala.1977), the district court held that CETA workers, who were trained by and worked full-time for the defendant but who were hired and paid by CETA, were not the defendant's employees for purposes of Title VII because defendant did not control them. On appeal, however, the Fifth Circuit, though not deciding this question, noted that "there was no evidence in the record to support a finding of control or lack of control." 612 F.2d 974, 979 n. 5 (5th Cir.1980). The district court opinion had not mentioned supervision.

employment income."[17] There is no allegation that any of these factors were present in Amarnare's case.

■ That plaintiff was paid directly by Mature Temps is not conclusive that she was solely its employee. That she was subject to the direction of Merrill Lynch in her work assignments, hours of service, and other usual aspects of an employee-employer relationship permits an inference that she was an employee of both Mature Temps and Merrill Lynch during the two-week period in question. Her status differs from that of most other Title VII plaintiffs in that her services were obtained through a temporary employment agency. At common law, the status of a person employed under such circumstances would be determined under the loaned servant doctrine, which provides that "an employee directed or permitted to perform services for another 'special' employer may become that employer's employee while performing those services."[18] Federal courts have applied this common law rule in other contexts and held that a person whose salary is paid by one entity while his services are engaged on a temporary basis by another is an employee of both entities.[19] The key factor in these loaned servant cases was the "special" employer's exclusive right to supervise the employee's work during the period of temporary service. These cases lend further support to the plaintiff's allegation that she was an employee of both Merrill Lynch and Mature Temps for purposes of Title VII.

■ Next, the plaintiff may also invoke Title VII on the alternative ground that Merrill Lynch allegedly interfered with her employment opportunities with Mature Temps. Several federal courts have held that Title VII permits suits against statutory employers "who are neither actual nor potential direct employers of particular complainants, but who control access to such employment and who deny such access by reference to invidious criteria."[20] Merrill Lynch allegedly has blocked plaintiff's access to temporary employment through Mature Temps, and the Ninth Circuit has held that Title VII applies in this situation. In *Gomez v. Alexian Brothers Hospital*,[21] the plaintiff practiced medicine under a professional corporation that proposed to the defendant hospital to operate its emergency room. Under the proposed contract, the plaintiff would serve as the director of the emergency room, although he would remain an employee of the professional corporation. After the hospital rejected the proposed contract on allegedly discriminatory grounds, the plaintiff was permitted to sue the hospital under Title VII for denying him the "opportunity to be employed by [the professional corporation] as director of defendants' emergency room."[22] The court reasoned:

> The fact that plaintiff continues as an employee of [the professional corporation] does not mean the employment relationship between [the professional corporation] and plaintiff has not been interfered with. The conditions of plaintiff's employment are different than they would have been had he not been discriminated against.[23]

The same reasoning applies in Amarnare's case. Even if she remains an employee of

---

17. *See Spirides,* 486 F.Supp. at 688; *Gutierrez,* 22 Fair Empl.Prac.Cas. at 448–49; *Smith,* 410 F.Supp. at 516–17; *Mathis,* 10 Empl.Prac.Dec. at 5246–47.

18. *Maynard v. Kenova Chem. Co.,* 626 F.2d 359, 361 (4th Cir.1980) (*per curiam*) (citing Restatement (Second) of Agency § 227 (1958)).

19. *See Maynard,* 626 F.2d at 361–62 (Manpower temp was an employee of special employer for purposes of state workers' compensation law); *Jacuzzi Bros.,* 454 F.2d at 285 (same involving Kelly Girl temp); *St. Claire v. Minnesota Harbor*

*Serv., Inc.,* 211 F.Supp. 521 (D.Minn.1962) (same involving Manpower temp).

20. *Sibley Memorial Hosp.,* 488 F.2d at 1342 (footnote omitted); *Pao v. Holy Redeemer Hosp.,* 547 F.Supp. 484, 494 (E.D.Pa.1982); *Puntolillo v. New Hampshire Racing Comm'n,* 375 F.Supp. 1089, 1092 (D.N.H.1974).

21. 698 F.2d 1019 (9th Cir.1983).

22. *Id.* at 1021.

23. *Id.*

Mature Temps and continues to receive temporary assignments at other companies, she asserts a claim for loss of opportunity to work for Mature Temps as an administrative assistant at Merrill Lynch.

 Merrill Lynch also argues that plaintiff has failed to allege facts sufficient to support a claim of unlawful discrimination. This argument has no merit. Amarnare has alleged that her work at Merrill Lynch was praised by two of her supervisors; that one of these supervisors later discharged her on the ground that her work was unsatisfactory; and that no other white employee, male or female, had been discharged by Merrill Lynch in the manner that she was discharged. Although these allegations do not state a claim of sex discrimination, in view of Amarnare's assertion that no white women were treated as she was, they do state a *prima facie* case of race discrimination under Title VII. The elements of a *prima facie* case are (1) the plaintiff is a member of a racial minority; (2) she was qualified for the job she held; (3) she was discharged despite her qualifications; and (4) after her discharge, her position remained open and the employer sought someone with comparable qualifications to fill it.[24] Amarnare's race and her discharge are not in dispute, and she has raised a question of fact concerning her qualifications for the job of administrative assistant. Although she has alleged no facts concerning the fourth element, it cannot be said that she could not prove such facts at trial and she may not be denied the opportunity to do so by a motion to dismiss.[25]

 Finally, the defendant's contention that the plaintiff has failed to make "a short and plain statement of the claim showing that the pleader is entitled to relief," as required by Fed.R.Civ.P. 8(a)(2),

merits little discussion. Rule 8 does not require that the facts on which a claim are based be set forth in detail, for these are to be ascertained in discovery.[26] Rather, the defendant need only be given the factual premises of the case so that it can respond.[27] In this case, the nature of the charge is clear: plaintiff alleges that Merrill Lynch discharged her from her temporary position as an administrative assistant because she is black and Afro-American and not because her work was unsatisfactory.

## THE CLAIM OF UNLAWFUL REFUSAL TO HIRE

With respect to this claim, Amarnare stands in the position of a prospective employee of Merrill Lynch. Since Title VII expressly forbids a statutory employer like Merrill Lynch from refusing to hire prospective employees because of their race or national origin,[28] the defendant's jurisdictional objection has no merit.

 The allegation that Merrill Lynch denied the plaintiff's application for permanent employment also states a Title VII claim in view of the allegations supporting her claim of unlawful discharge. If Amarnare could prove facts that show she was discharged from her temporary position because of her race and national origin, then it could be inferred that race and national origin were also factors in the defendant's alleged decision to deny her application for permanent employment, provided she made such application. Amarnare alleges that she filed an application with the receptionist. Defendant states that it has no record of having received such an application. Whether her application ever reached the attention of the defendant's officials in charge of hiring and whether they acted upon it need not now be answered. The

---

**24.** *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973).

**25.** *See Conley,* 355 U.S. at 45–46, 78 S.Ct. at 102.

**26.** *See Obradovich v. Federal Res. Bank,* 569 F.Supp. 785, 788 (S.D.N.Y.1983).

**27.** *See Ferguson v. Mobil Oil Corp.,* 443 F.Supp. 1334, 1336 (S.D.N.Y.1978), *aff'd,* 607 F.2d 995 (2d Cir.1979) (mem.).

**28.** *See* 42 U.S.C. § 2000e–2(a)(1) (1982); *see also Mathis,* 10 Empl.Prac.Dec. at 5246.

claim of unlawful refusal to hire on a permanent basis raises questions of fact and therefore is sufficient to withstand a motion for dismissal.

The defendant's motion to dismiss the amended complaint is denied with regard to the claims that Merrill Lynch discharged Amarnare from her temporary job and refused to hire her for a permanent job because of her race and national origin. The motion is granted, however, insofar as those claims are based upon allegations of sex discrimination.

So ordered.