**Warren ASTROWSKY, Plaintiff,**

v.

**FIRST PORTLAND MORTGAGE CORPORATION, INC., et al., Defendants.**

Civ. No. 94–260–P–C.

United States District Court, D. Maine.

June 2, 1995.

---

Richard B. Slosberg, Portland, ME, for plaintiff.

Lawrence Winger, Verrill & Dana, Portland, ME, for defendant.

*MEMORANDUM OF DECISION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT*

GENE CARTER, Chief Judge.

This is a wrongful discharge case arising out of the January 3, 1994, termination of Plaintiff Warren Astrowsky from his position as a loan officer with Defendant First Port-

land Mortgage Corporation. Plaintiff has also named Atlantic Staff Management Corporation and Eduard P. van Loenen as Defendants. Plaintiff has alleged claims for violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621 *et seq.* (Count I), the Maine Human Rights Act, 5 M.R.S.A. §§ 4551 *et seq.* (age based) (Count II); Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* (Count III); Maine Human Rights Act, 5 M.R.S.A. §§ 4551 *et seq.* (retaliation) (Count IV), Maine Whistleblowers' Protection Act, 26 M.R.S.A. §§ 833 *et seq.* (Count V); Family Medical Leave Act, 29 U.S.C. §§ 2601 *et seq.* and 5 U.S.C. §§ 6381 *et seq.* (Count VI); Maine Family Medical Leave Act, 26 M.R.S.A. §§ 843 *et seq.* (Count VII); Intentional Infliction of Emotional Distress (Count VIII); Negligent Infliction of Emotional Distress (Count IX).

## I. FACTS

The record reveals that the following facts are undisputed. Astrowsky had been working for First Portland Mortgage as a Loan Officer since January 1991. At all times First Portland had only nine or ten employees. Astrowsky Depo. at 53, 119; van Loenen Depo. at 85. Astrowsky worked for First Portland as an independent contractor. Astrowsky Aff. (Docket No. 19) at ¶ 13. In April 1993 Astrowsky filed a request for "Determination of Work Status for Purposes of Federal Employment Taxes and Income Tax Withholding" with the Internal Revenue Service (IRS). Defendants' Statement of Material Facts (Docket No. 8) Ex. A. In October 1993 the IRS issued its determination finding Astrowsky should be treated/characterized as an "employee" of First Portland. Defendants' Statement of Material Facts Ex. B. Thereafter, Astrowsky and all other loan officers became leased employees of First Portland Mortgage through Atlantic Staff Management in October 1993. Astrowsky Depo. 53; van Loenen Depo. at 105, 107; Defendants' Statement of Material Facts Exs. C, D, and E.

First Portland used Atlantic Staff Management in order to obtain payroll and benefits services for its employees. van Loenen

Depo. at 25, 36, 65. Along with the change in his employment status came changes in Astrowsky's conditions of employment. Astrowsky Aff. at ¶ 21. Although Atlantic Staff Management did not direct, control, or supervise Astrowsky's work, Astrowsky Depo. at 53–58, Atlantic Staff management paid his commission checks and made all the withholdings from his pay checks. Astrowsky Aff. ¶ 19. After Astrowsky became an employee of First Portland Mortgage he had disputes with the company concerning his withholding taxes. Astrowsky Depo. at 56, 122–124; Defendants' Statement of Material Facts Exs. F and G.

In October 1993 the President of First Portland, Eduard P. van Loenen, selected Jeff Trombly to be the new sales manager for First Portland and Astrowsky's supervisor. On November 5, 1993, Astrowsky requested time off for vacation from November 22 through January 4, 1994. Defendants' Statement of Material Facts Ex. H. Trombly denied his request because of high work load and, contrary to Astrowsky's written request, he was not entitled to any vacation time. van Loenen Depo. at 82–83; Defendants' Statement of Material Facts Ex. I and J. Sometime thereafter Astrowsky requested vacation for December 12 through January 3, 1994. Defendants' Statement of Material Facts Ex. J. This request was also denied by Trombly. Defendants' Statement of Material Facts Ex. J.

Astrowsky then requested a family medical leave to go to Florida to assist his adult stepdaughter in attending a doctor's appointment and to care for her five-year-old child. Astrowsky Depo. at 45–53. First Portland granted Astrowsky four days to attend to his family business, warning him that if he exceeded the time allotted he may be subject to disciplinary action including termination. van Loenen Depo. at 81, 83–89, 97; Defendants' Statement of Material Facts Ex. K. On December 9 Astrowsky left for Florida and did not return to work until January 3, 1994. After meeting with his supervisors, Astrowsky was terminated for failure to follow First Portland's directives. Defendants' Statement of Material Facts Exs. L and M. Atlantic Staff management played no role in

the decision to terminate Astrowsky's employment. Defendants' Statement of Material Facts Exs. L and M.

## II. DISCUSSION

A motion for summary judgment must be granted if "[T]he pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The Court of Appeals for the First Circuit has aptly articulated the legal standard to be applied in deciding motions for summary judgment:

> [T]he movant must adumbrate 'an absence of evidence to support the nonmoving party's case.' *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 [106 S.Ct. 2548, 2554, 91 L.Ed.2d 265] (1986). When that is accomplished, the burden shifts to the opponent to establish the existence of a fact issue which is both 'material,' in that it might affect the outcome of the litigation, *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 [106 S.Ct. 2505, 2510, 91 L.Ed.2d 202] (1986); *Hahn v. Sargent,* 523 F.2d 461, 464 (1st Cir.1975), *cert. denied,* 425 U.S. 904 [96 S.Ct. 1495, 47 L.Ed.2d 754] (1976), and 'genuine,' in that a reasonable jury could, on the basis of the proffered proof, return a verdict for the opponent. *Anderson,* 477 U.S. at 248 [106 S.Ct. at 2510]; *Oliver v. Digital Equipment Corp.,* 846 F.2d 103, 105 (1st Cir.1988). It is settled that the nonmovant may not rest upon mere allegations, but must adduce specific, provable facts demonstrating that there is a triable issue. 'The evidence illustrating the factual controversy cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a factfinder must resolve at an ensuing trial' *Mack v. Great Atlantic and Pacific Tea Co.,* 871 F.2d 179, 181 (1st Cir.1989). As the Supreme Court has said:
>
> > [T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is

merely colorable, or significantly probative, summary judgment may be granted.

*Anderson,* 477 U.S. at 249–50, 106 S.Ct. at 2511.

*Brennan v. Hendrigan,* 888 F.2d 189, 191–92 (1st Cir.1989).

## A. FEDERAL STATUTORY CLAIMS AND THE MAINE FAMILY MEDICAL LEAVE ACT

The Court's analysis properly begins with the threshold determination of whether each of the three defendants can be held liable as an "employer" for purposes of Title VII, ADEA, the federal Family Medical Leave Act and the Maine Family Medical Leave Act. In order to be subject to liability under these statutory provisions, Defendants must fall within the statutory definition of "employer." Title VII defines the term "employer" to include "a person engaged in industry affecting commerce who has *fifteen or more employees.*" 42 U.S.C. § 2000e(b) (emphasis added). Similar provisions requiring "twenty or more," "fifty or more," and "twenty-five or more" employees are found in the ADEA, the federal Family Medical Leave Act, and the Maine Family Medical Leave Act respectively. The Court will use Title VII as a base because if the employee head count is insufficient to establish jurisdiction under Title VII it will likewise be insufficient under ADEA, the federal Family Medical Leave Act or the Maine Family Medical Leave Act.

■ Defendant First Portland employs only nine or ten persons. Astrowsky Depo. at 53, 119; van Loenen Depo. at 85. Thus First Portland is not an "employer" for purposes of Title VII, ADEA, the federal Family Medical Leave Act or the Maine Family Medical Leave Act. Assuming Defendant van Loenen can be sued as an individual under Title VII,[1] Plaintiff is likewise unable to meet the requisite number of employees to satisfy statutory definition of "employer" for purposes of Title VII, ADEA, the federal Family Medical Leave Act or the Maine Family Medical Leave Act. With regard to Defendant Atlantic Staff Management, the only information on its status as an "employer" is contained in the Amended Complaint where it is alleged that Atlantic Staff Management "is, and has been itself an employer within the meaning of the ADEA, the MHRA, Title VII, the Whistleblowers' Protection Act, the Federal Family Leave Act, and the Maine Family Leave Act." Amended Complaint ¶ 6. Mere allegations are insufficient to withstand a motion for summary judgment. *Hoffman v. Reali,* 973 F.2d 980, 984 (1st Cir.1992). Because the record does not contain any evidence that Atlantic Staff Management employs at least fifteen persons, it is not an "employer" for purposes of Title VII, ADEA, the federal Family Medical Leave Act or the Maine Family Medical Leave Act.[2]

■ Plaintiff contends that First Portland, Atlantic Staff Management, and van Loenen constitute a "single or joint employer." Amended Complaint ¶ 8. However, even assuming Atlantic Staff Management has the requisite number of employees for the Court to exercise jurisdiction, Defendants contend that Atlantic Staff Management did not exercise sufficient control over Astrowsky to be

---

1. Defendants contend that van Loenen cannot be personally liable on any of Plaintiff's federal statutory claims. The majority of the courts of appeals agree that supervisors and other employees cannot be held liable under Title VII in their individual capacities. *See Grant v. Lone Star Co.,* 21 F.3d 649, 651–52 (5th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 574, 130 L.Ed.2d 491 (1994); *Smith v. St. Bernards Regional Medical Center,* 19 F.3d 1254, 1255 (8th Cir.1994); *Miller v. Maxwell's International,* 991 F.2d 583 (9th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1049, 127 L.Ed.2d 372 (1994); *Sauers v. Salt Lake County,* 1 F.3d 1122, 1125 (10th Cir.1993); *Busby v. City of Orlando,* 931 F.2d 764, 772 (11th Cir.1991). *But see Birkbeck v. Marvel Lighting Corp.,* 30 F.3d

507 (4th Cir.1994). The Court of Appeals for the First Circuit has not addressed the issue and it is unnecessary for this Court to reach today.

2. Title VII makes it unlawful for "employers," "employment agencies," or "labor organizations" to discriminate against an individual because of race, color, religion, sex, or national origin. 42 U.S.C. § 2000e–2(a). Unlike the definition of "employer," the definition of "employment agency" does not include any size requirement for coverage under Title VII. 42 U.S.C. §§ 2000e(b) and (c). Plaintiff has not alleged that he is suing Atlantic Staff Management in its capacity as an employment agency.

considered his "employer" within the meaning of the pertinent federal statutes. This Court agrees.

Most Title VII cases involve the conventional single employer situation where the employer-employee relationship is obvious. In atypical situations, like the instant case, where the employment relationship is more complicated, courts have suggested that the term "employer" under Title VII should be "construed in a functional sense to encompass persons who are not employers in conventional terms, but who nevertheless control some aspect of an individual's compensation, terms, conditions, or privileges of employment." *Bostick v. Rappleyea*, 629 F.Supp. 1328, 1334 (N.D.N.Y.1985) (quoting *Spirt v. Teachers Insurance and Annuity Associates*, 475 F.Supp. 1298, 1308 (S.D.N.Y.1979), *aff'd in part and reversed in part on other grounds*, 691 F.2d 1054 (2d Cir.1982), *cert. denied* 469 U.S. 881, 105 S.Ct. 247, 83 L.Ed.2d 185 (1984)); *accord Magnuson v. Peak Technical Services, Inc.*, 808 F.Supp. 500 (E.D.Va.1992). The result of this inquiry may be that a "joint employer" relationship exists. *See Amarnare v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 611 F.Supp. 344 (S.D.N.Y.1984); *see also N.L.R.B. v. Browning–Ferris Industries, Inc.*, 691 F.2d 1117, 1122 (3d Cir.1982) (case arises under the National Labor Relations Act); *N.L.R.B. v. Jewell Smokeless Coal Corp.*, 435 F.2d 1270, 1271 (4th Cir.1970) (per curiam) (case arises under the National Labor Relations Act).

The "joint employer" concept does not depend on the existence of a single, integrated enterprise. Rather, "a finding that companies are 'joint employers' assumes in the first instance that companies are 'what they appear to be'—independent legal entities that have merely 'historically chosen to handle jointly ... important aspects of their employer-employee relationship.'" *Browning–Ferris Industries*, 691 F.2d at 1122 (citing *N.L.R.B. v. Checker Cab Co.*, 367 F.2d 692, 698 (6th Cir.1966)). The joint employer issue has arisen in at least one case involving an employment agency. In *Amarnare* the court held that a temporary services agency and the company that had contracted with the agency for temporary assistance were both joint employers of the temporary employee for purposes of Title VII. In *Amarnare* plaintiff had been assigned to work at Merrill Lynch for two weeks, where she was under the direct supervision of Merrill Lynch employees. The issue presented was whether Merrill Lynch was an employer under Title VII—the court simply assumed that the employment agency, not named in the lawsuit, was an employer. In reaching its conclusion, the court analyzed the "'economic realities' of the situation 'viewed in light of the common law principles of agency and the right of the employer to control the employee,'" and held that "'the extent of the employer's right to control the means and manner of the worker's performance is the most important factor.'" *Id.* at 347–48 (quoting *Cobb v. Sun Papers, Inc.*, 673 F.2d 337, 341 (11th Cir. 1982) and *Spirides v. Reinhardt*, 613 F.2d 826, 831 (D.C.Cir.1979)). The Court ultimately found that Merrill Lynch had "complete" control over plaintiff's work assignments, the means and manner of her performance and the hours of her employment.

This case is distinguishable from *Amarnare* because it requires the Court to analyze the control the employment agency has over the worker. There is no factual dispute in this case but that while Atlantic Staff Management processed Astrowsky's commission checks and made the necessary income tax withholdings, it did not exercise *any* control over him as an employee. Astrowsky was already working for First Portland when he was required to sign up with Atlantic Staff Management. After the IRS determination, Astrowsky, and the other loan officers, filled out employment application forms for Atlantic Staff Management as requested by First Portland. Astrowsky Aff. (Docket No. 19) ¶ 19. All of the terms and conditions of Astrowsky's employment were set out in his contract with First Portland including his commission rate, daily work schedule, and vacation benefits. Defendants' Statement of Material Facts Ex. C. Astrowsky was supervised by van Loenen and Trombly. Astrowsky Aff. ¶ 19. After Astrowsky filled out the initial employment forms, Atlantic Staff Management took no employment action with regard to Astrowsky. Unlike a temporary

employee in *Amarnare,* Astrowsky had been leased to First Portland for the long term and was, in essence, a permanent employee of First Portland. In the absence of *any* control no meaningful employment relationship existed between Astrowsky and Atlantic Staff Management. Therefore, no joint employer relationship existed between First Portland and Atlantic Staff Management.

The Court is satisfied that Defendants do not meet the requirements for "employer" status and, thus, it cannot properly exercise jurisdiction over Defendants on Plaintiff's claims under Title VII, ADEA, the federal Family Medical Leave Act and the Maine Family Medical Leave Act. Accordingly, the Court will grant Defendants' Motion for Summary Judgment on Counts I, III, VI, and VII.

### B. STATE LAW CLAIMS

The Court, having found that Plaintiff's federal claims fall to Defendants' summary judgment motion, must dismiss without prejudice for want of jurisdiction the remaining state-law-based claims arising under the Maine Human Rights Act, the Whistleblowers' Protection Act and the common law claims for negligent and intentional infliction of emotional distress. *Snowden v. Millinocket Regional Hospital,* 727 F.Supp. 701, 710 (D.Me.1990).[3]

Accordingly, it is *ORDERED* that Defendants' Motion for Summary Judgment be, and it is hereby, *GRANTED* on Counts I, III, VI, and VII. It is further *ORDERED* that Counts II, IV, V, VIII, and IX be dismissed without prejudice.

---

3. In the *Snowden* case this Court takes the position that dismissal of the state-law-based claims *is required* with the dismissal of the claims based on federal law under an appropriately strict construction of the language and holding of *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). This Court is aware that this position is out of the mainstream of construction of the *Gibbs* opinion; the mainstream interpretation leaving dismissal of the state-law-based claims to the court's discretion.

The Court notes that if the mainstream construction of *Gibbs* is the proper one, this Court would nevertheless dismiss, in the exercise of its discretion, the state claims here. There is absolutely no reason why this Court should exercise its supplemental jurisdiction over the state claims in this case once the federal claims asserted are dismissed.