**Paul CASTON, Plaintiff,**

v.

**METHODIST MEDICAL CENTER OF ILLINOIS, Defendant.**

**Case No. 00–CV–1127.**

United States District Court, C.D. Illinois.

Aug. 20, 2002.

1003

Paul Caston, Pekin, IL, pro se.

Stephen D. Erf, Normal W. Zeitler, Brock F. Renner, William Pokorny, McDermott Will & Emery, Chicago, IL, for defendant.

### ORDER

MIHM, District Judge.

This matter is now before the Court on Defendant's Motion to Dismiss. For the reasons set forth below, the Motion to Dismiss is DENIED [# 64].

## FACTUAL BACKGROUND

The Plaintiff, Paul K. Caston ("Caston"), is an African–American male who currently resides in the Federal Corrections Institution in Pekin and has two prior felony convictions. After being released from federal prison in 1997, Caston sought employment at Nord Cleaning Service, Inc. ("Nord"), a janitorial contractor. He was interviewed by Nord employee, John Miller ("Miller"), and was subsequently told that he was "tentatively" hired pending the result of certain medical tests. He was then assigned to work at Methodist Medical Center of Illinois ("Methodist"), a hospital. Miller forwarded Caston's name, along with several others, to Darrell Pentecost ("Pentecost"), the Director of Environmental Services at Methodist.

Pentecost was advised by Steve Smith ("Smith"), Methodist's Director of Parking Security and Transportation, that Caston and three other Nord employees had felony convictions. Pentecost then told Miller that Methodist did not want Nord to send any employees with felony records. Miller subsequently informed Caston that his employment was terminated. When Caston asked for an explanation, Miller responded by explaining it was "because of [his] felony conviction and ..." Miller did not complete the sentence but explained that there was "... nothing he could do about it."

On July 7, 1997, Caston filed a Charge of Discrimination with the Illinois Department of Human Rights ("IDHR"), contending that Methodist had discriminated against him on the basis of his "race and arrest record." In that charge, Caston acknowledged Nord as his employer, but did not name it as a respondent. At a fact-finding conference, a Department investigator, Steven Mandeville ("Mandeville"), discussed with Caston his failure to name Nord as a respondent. Caston eventually agreed to amend his charge to name Nord as a respondent; however, he never made such an amendment. Caston alleges that he thought Mandeville would make the amendment. The charge was subsequently dismissed for lack of jurisdiction. Caston appealed the decision through the administrative process and the IDHR's decision was ultimately affirmed.

Then, on April 5, 2000, Caston filed a four-count Complaint ("original complaint") against Methodist, Pentecost, Smith, Nord, and Miller, for violations allegedly arising under 42 U.S.C. § 1981 and Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq* ("Title VII"). Defendants Methodist, Nord and Miller subsequently filed Motions to Dismiss and Caston filed a Motion for Leave to File an Amended Complaint. On April 9, 2001, Magistrate Judge John A. Gormon delivered a Report and Recommendation ("R & R"), in which he recommended that the Motions to Dismiss be granted and the Motion for Leave to Amend be denied. On September 7, 2001, this Court affirmed in part and modified in part the R & R, granting the Motions to Dismiss, but also granting Caston's Motion for Leave to File an Amended Complaint. Nord and Miller were terminated as defendants, as Caston had not yet exhausted his administrative remedies in regards to those defendants. Smith and Pentecost were also terminated as defendants, as supervisors acting in their individual capacity are not subject to liability under Title VII.

On June 4, 2001, Caston filed his First Amended Verified Complaint ("Amended Complaint") against Defendants Methodist, Pentecost, Smith, Nord and Miller[1].

---

1. Caston initially failed to timely file his Amended Complaint pursuant to this Court's September 7, 2001 Order. Consequently, the Court dismissed portions of his Complaint with prejudice. However, Caston claimed that he never received the September 7, 2001

Caston sets forth three counts all predicated on Title VII of the Civil Rights Act, 42 U.S.C. § 2000e–2(a)(1). Count I, alleges that Smith and Pentecost, acting outside the scope of their employment with Methodist, tortiously interfered with his prospective economic advantage and employment opportunities. Count II alleges that Smith and Pentecost, acting in their capacity as agents and officers of Methodist, tortiously interfered with prospective economic advantages and equal employment opportunities. Count III accuses Nord and Miller, as Nord's agent and officer, of "Wrongful Termination by Acquiesce (sic) to Tortious Interference with Prospective Economic Advantage and Equal Employment Opportunities." Methodist subsequently filed the pending Motion to Dismiss.

## LEGAL STANDARD

In resolving a motion to dismiss, this Court must consider all well-pled facts as true and must draw all inferences in favor of the non-moving party. *Bontkowski v. First Nat. Bank of Cicero,* 998 F.2d 459, 461 (7th Cir.1993), *cert. denied,* 510 U.S. 1012, 114 S.Ct. 602, 126 L.Ed.2d 567 (1993). In ruling on a motion to dismiss, courts consider whether relief is possible under any set of facts that could be established consistent with the allegations in the Complaint. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). In an employment discrimination case, the plaintiff need not plead specific facts establishing a prima facie case, but instead must only give "a short and plain statement of the claim showing that the pleader is entitled to relief." *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 122 S.Ct. 992, 998, 152 L.Ed.2d 1 (2002). Such a statement must

simply "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley,* 355 U.S. at 47, 78 S.Ct. 99. This Court will then dismiss the claim only if it is beyond doubt that no set of facts would entitle the Plaintiff to relief. *Chaney v. Suburban Bus Div.,* 52 F.3d 623, 627 (7th Cir.1995); *Venture Associates Corp. v. Zenith Data Systems Corp.,* 987 F.2d 429, 432 (7th Cir. 1993).

## DISCUSSION

Before deciding the dispositive issue of whether Caston has stated a Title VII claim, the Court must first decide whether Caston has alleged an employer-employee relationship sufficient to bring his claim within the ambit of Title VII.

## I. Title VII Employer–Employee Relationship

Count II charges Methodist with tortious interference with prospective economic advantages and equal employment opportunities. While couched in terms of state law claims, plaintiff's allegations in Count II, when considering the Amended Complaint as a whole, may be fairly construed to state a claim under federal law, more specifically Title VII of the Civil Rights Act of 1964. Caston asserts claims pursuant to 42 U.S.C. § 2000e–2(a)(1), which states:

It shall be an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's

---

Order due to his transfer from state to federal custody and his consequent change of address. Before the Court could vacate its September 7, 2001 Order, however, Caston filed a Notice of Appeal. The Court then requested

that the Seventh Circuit Court of Appeals remand the case to allow the Court to vacate it's dismissal of Caston's complaint and allow him additional time to file an Amended Complaint.

race, color, religion, sex, or national origin.

Methodist objects to the Amended Complaint on the grounds that Caston has failed to establish a direct employment relationship between himself and Methodist. Caston agrees with Methodist that there is no direct employment relationship[2]; however, he relies on the theory set forth in *Doe v. St. Joseph's Hosp. Of Fort Wayne*, 788 F.2d 411 (7th Cir.1986), which would allow a plaintiff to pursue a Title VII claim without establishing any sort of employment relationship with the defendant. However, Caston's reliance on *Doe* must fail, as it was overruled by the Seventh Circuit in *Alexander v. Rush North Shore Medical Ctr.*, 101 F.3d 487 (7th Cir. 1996). *Alexander* overruled *Doe's* lax approach to employer liability under Title VII, holding that an independent contractor may not bring a Title VII action against an employer where his services were primarily within his sole control, he did not receive paychecks from the employer and did not list the employer as his employer on his income tax returns. *Id.* Thus, Caston's attempt to establish a Title VII claim without establishing any sort of employment relationship must fail.

The courts have consistently held that "Title VII contemplates some type of employment relationship." *Sibley Memorial Hosp. v. Wilson*, 488 F.2d 1338, 1341 (D.C.Cir.1973). A plaintiff may unquestionably bring a Title VII claim against an employer with whom he shares a direct employer-employee relationship. 42 U.S.C. § 2000e(f); *See Sibley*, 488 F.2d 1338; *See also Alexander*, 101 F.3d 487. However, the Court need not consider whether Caston could maintain a claim against Methodist for violation of Title VII under a direct employment relationship, as Caston does not argue that he was an "employee" of Methodist, but rather certainly concedes that he was an employee of Nord. We also need not consider whether Caston was an independent contractor, as Methodist has made no such assertion. Therefore, our analysis of Title VII liability must extend beyond the analysis of a direct employment relationship to "employers" who are merely in a position to interfere with the plaintiff's employment relationship with some third party employer.

▮▮▮▮ Third party interference liability may be imposed upon statutory employers "who are neither actual nor potential direct employers of particular complainants, but who control access to such employment by reference to invidious criteria." *Sibley*, 488 F.2d 1338, 1342. To determine whether a statutory employer "controls access" to employment opportunities, federal courts generally apply the common law "right to control" test to the facts of the case. *Alexander*, 101 F.3d at 492. The right to control test has been used to analyze a number of situations in which there has been interference with some third party employment relationship.[3] *Sibley*, 488 F.2d at 1342; *Spirides v. Rein-*

2. As Caston's original complaint failed to establish any sort of employment relationship between himself and Methodist, the Magistrate Judge recommended that Caston pursue his allegations against Methodist as a "joint" employer of Nord. The Court acknowledged this recommendation in it's September 7, 2001, Order, and thereafter granted Caston leave to file an amended complaint in order to allow him to allege facts that would satisfy the employee-employer criteria of Title VII. In his Amended Complaint, Caston chooses not to establish a joint relationship between Methodist and Nord, but rather relies on the theory set forth in *Doe v. St. Joseph's Hosp. Of Fort Wayne.*

3. The Seventh Circuit intentionally left open the question of third party employment liability (*Alexander*, 101 F.3d at 493 n. 2); therefore, the Court looks primarily to persuasive authority.

*hardt,* 613 F.2d 826, 832 (D.C.Cir.1979); *Amarnare v. Merrill Lynch,* 611 F.Supp. 344 (S.D.N.Y.1984); *Vakharia v. Swedish Covenant Hosp.,* 765 F.Supp. 461, 466 (N.D.Ill.1991).

The common law right to control test focuses on five factors: (1) the extent of the employer's control and supervision over the worker, including directions on scheduling and performance of work; (2) the kind of occupation and nature of skill required, including whether skills are obtained in the workplace; (3) responsibility for costs of operation, such as equipment, supplies, fees, licenses, workplace, and maintenance operations; (4) method and form of payment and benefits; and (5) length of job commitment and/or expectations. *Alexander,* 101 F.3d 487, 492. "Of the several factors to be considered, the employer's right to control is the most important" in analyzing the employer-employee relationship. *Alexander* at 493, (*citing Knight v. United Farm Bureau Mut. Ins. Co.,* 950 F.2d 377, 378 (7th Cir. 1991)). Generally, where an employer has the right to control the means and manner of an individual's performance, and to direct the work of that individual, an employer-employee relationship is likely to exist. *Spirides,* 613 F.2d at 831–32.

The Southern District of New York had occasion to consider issues virtually identical to the issues raised in Caston's Amended Complaint when deciding *Amarnare v. Merrill Lynch,* 611 F.Supp. 344. In *Amarnare,* an employee of a temporary employment agency brought a Title VII action against the brokerage firm with which she was temporarily working. The plaintiff claimed that she was refused a promotion and subsequently terminated due to her race and sex. *Id.* at 346. Her complaint claimed interference with employment opportunities in that the conditions of her employment were different than they would have been if she had not been subjected to the defendant's discrimination. *Id.* at 349. The defendant moved to dismiss on the basis that the plaintiff was an independent contractor and was, therefore, precluded from bringing suit under Title VII. *Id.* at 346. Applying a modified version of the right to control test, the D.C. Circuit found that employers who retain temporary employees exert control over the employee to the extent that their duties are regulated primarily by that employer. *Id.* Though the plaintiff was paid by the employment agency, the court stated that there was an employment relationship between the temporary employee and the defendant sufficient to bring the claim within the scope of Title VII because the defendant "controlled [the plaintiff's] work hours, work place, and work assignments; hired, trained and supervised her; and ultimately discharged her." *Id.* The Court ultimately held that where a statutory employer discriminatorily refuses to promote or hire an employee of a temporary employment agency, the employee may bring suit even where she continues to receive temporary assignments at other companies. *Id.*

Analysis under the right to control test is plainly applicable to the facts at hand. Caston alleges that Methodist interfered with his right of employment at Methodist through Nord. As the defendant did in *Amarnare,* Methodist would have controlled Caston's work hours, work place and work assignments, as well as being responsible for training, supervision and discharge. Though Caston would have continued to receive his paychecks from Nord, Methodist had sole control over his ability to retain employment with Methodist at that time. When Methodist failed to hire Caston, he may have lost employment opportunities offered only by Methodist, such as higher pay, better work hours, etc. Because Methodist was in a position to

interfere with Caston's employment opportunities with Nord, Caston's relationship with Methodist is sufficient to bring his claim within the scope of Title VII.

### II. Validity of Caston's Title VII Claim

 Although far from clear, Caston's Amended Complaint can be construed as stating a disparate impact claim. Caston alleges that Methodist specifically targeted "blacks with ex-felon backgrounds to tortiously interfere with [their] employment rights and exclude them from positions of employment in which [they] were sufficiently qualified for." He additionally argues that Methodist caused "the replacement of blacks with arrest records . . . with nonminorities with no arrest record." Thus, it appears that Caston claims that Methodist's policy of not hiring felons had a disparate impact on African Americans.

To succeed on a disparate impact claim, a plaintiff must make out a prima facie case by showing that the application of a facially neutral employment practice had a disproportionate effect in terms of the race of those hired. *Price v. City of Chicago,* 251 F.3d 656, 659 (7th Cir.2001). The defendant must then demonstrate that the challenged practice is job related for the position in question and consistent with business necessity. *Id.* At this stage, it cannot be said that Caston will be unable to establish that Methodist's blanket policy of refusing to hire convicted felons did not have a disparate impact on African–Americans. Nor can it be said that Methodist's blanket policy is job related and consistent with business necessity. Rather, the issues to which Methodist objects are more appropriately resolved at the summary judgment stage. Accordingly, Methodist's request to dismiss Caston's Title VII claim at this point is denied.

CONCLUSION

For the reasons stated herein, Defendant's Motion to Dismiss the Amended Complaint is DENIED [# 64].