**SIBLEY MEMORIAL HOSPITAL,**
Appellant,

v.

**Verne WILSON.**

No. 72–1498.

United States Court of Appeals,
District of Columbia Circuit.

Argued Oct. 26, 1973.

Decided Nov. 29, 1973.

Thomas M. Raysor, Chevy Chase, Md., for appellant.

R. Bruce Keiner, Jr., Washington, D. C., for appellee.

Julia P. Cooper, Acting Associate Gen. Counsel, Equal Employment Opportunity Commission, Beatrice Rosenberg and Edward Katze, Attys., EEOC, filed a brief on behalf of the EEOC as amicus curiae.

Before BAZELON, Chief Judge, and McGOWAN and MacKINNON, Circuit Judges.

McGOWAN, Circuit Judge:

This appeal from a *sua sponte* grant of summary judgment in the District Court, 340 F.Supp. 686, requires us to resolve only the question of whether, on the facts alleged in the complaint, the action was maintainable under Title VII of the Civil Rights Act of 1964. 42 U. S.C. § 2000e et seq. We agree with the District Court's holding that it was, but we do not agree that the record before it

justified the District Court's entry of summary judgment, since the liability of appellant under the Act depends upon the resolution at trial of material issues of fact which appear to be in dispute. Accordingly, we reverse and remand for further proceedings.

I

Appellee is a male private duty nurse licensed to practice in the District of Columbia. Appellant is a private non-profit hospital in the District of Columbia. Appellee works for patients in private hospitals pursuant to arrangements under which hospital patients who require the services of a private nurse ask the Nursing Office of the hospital to communicate their need to one of the registries operating in the District—the Professional Nurses' Official Registry or the United States Employment Service registry. When a patient at appellant Sibley makes such a request, he or she is informed that neither the hospital nor the registry to which it will refer the offer of employment can discriminate on the basis of race, age or sex. The patient's request is telephoned to the Professional Nurses' Official Registry, which matches the request with the name of a nurse who has indicated his or her availability for work that day. The nurse is informed of the patient's name and situation, and told to report directly to the patient's room at the hospital. If, on arrival, the nurse is for any reason unacceptable to the patient, the patient is nevertheless obliged to pay the nurse for a full day's work.

This registry and referral system is designed to insure that no private duty nurses are victimized by invidious discrimination. Such nurses as are rejected by patients for discriminatory reasons must be paid by the patient for one day's service. Appellee alleged, however, that on two occasions, in 1968 and 1969, supervisory nurses at appellant themselves rejected him because he is a male and the requesting patients were female; and that such supervisory personnel prevented his reporting to the re-

questing patient, to be accepted or rejected but nonetheless compensated. He further alleged that during the period 1936 to 1970 every patient whom he attended at appellant was male, despite the fact that female nurses routinely served both male and female clients.

■ In the wake of his first alleged rejection, appellee filed complaints with District of Columbia Council on Human Relations and the United States Equal Employment Opportunity Commission (EEOC). The EEOC, having found reasonable cause to believe that appellant had violated the terms of Title VII of the Civil Rights Act of 1964, attempted to conciliate the dispute, without success. It eventually notified appellee of the accrual of his right to sue in District Court, and a timely complaint was filed for injunctive relief and for monetary damages.[1]

Appellee's original complaint, filed September 13, 1971, alleged but one cause of action, that arising under Title VII. Appellant responded on October 12, 1971, by moving to dismiss, or for summary judgment, on the sole ground that "[t]he complaint [did] not allege jurisdictional facts to come within said statute, *i. e.*, it [did] not set forth the necessary employer-employee relationship. . . ." The motion was supported by a statement of material facts as to which there is no dispute. Rule 9(h) of the Local Rules. Appellee, on December 2, 1971, filed an opposition, supported by an affidavit reciting the

two occasions on which he asserted that he had been turned away by the supervisory personnel.[2]

In this posture, the District Court decided the jurisdictional issue adversely to appellant and, accordingly, denied its motion to dismiss or for summary judgment. Appellant having not as yet responded in any fashion on the merits, the court noted that the hospital did not appear to have denied appellee's factual allegations, and, on the basis of the papers before it and without oral argument, entered summary judgment, *sua sponte*, for appellee.

## II

Title VII of the Civil Rights Act of 1964 makes it an unlawful employment practice for an employer to engage in certain enumerated forms of discrimination on the basis, *inter alia*, of sex. For purposes of the Act, an "employer" is, with certain exceptions not here relevant,[3] defined as a "person engaged in an industry affecting commerce who has twenty-five or more employees." That appellant falls within this definition is not disputed. Appellant takes the position, however, that, since no direct employment relationship between itself and appellee was ever contemplated by either of them, it is not an employer under the Act with respect to him.

The Supreme Court has said that the Congressional objective in Title VII is "plain from the language of the statute," and that it is "to achieve *equality*

---

1. The timeliness of the complaint is measured by the statutory requirement of 30 days from the receipt by appellee of the notice from the EEOC of the ripening of the right to sue. This notice was issued on August 12, 1971, and the complaint was filed the following September 13. We note that this was more than three years after appellee's complaint was made to the EEOC on July 24, 1968. There is no express requirement in the Act, however, as to the time within which the EEOC must complete its consideration of a complaint.

   The District of Columbia Council on Human Relations appears to have taken no action with respect to the earlier complaint filed with it by appellee on May 8, 1968.

2. While appellant's motion was pending, appellee filed an amended complaint alleging as additional jurisdictional bases the Fifth and Fourteenth Amendments and the Civil Rights Act of 1866, citing 42 U.S.C. § 1983. Appellant moved to strike the amended complaint, and this motion was denied on the same day summary judgment was ordered for appellee. Liberal construction of the amended complaint would enable it to be read as asserting an additional cause of action under § 1983, but the district judge's disposition of the case made it unnecessary to advert to this possibility, which has since been foreclosed by District of Columbia v. Carter, 409 U.S. 418, 93 S.Ct. 602, 34 L.Ed.2d 613 (1973).

3. 42 U.S.C. § 2000e(b).

*of employment opportunities . . . "* (Emphasis supplied). Griggs v. Duke Power Co., 401 U.S. 424, 429, 91 S.Ct. 849, 853 (1969). In prohibiting discrimination in employment on the basis of sex, "one of Congress' main goals was to provide equal access to the job market for both men and women." Diaz v. Pan American World Airways, Inc., 442 F.2d 385, 386 (5th Cir.), cert. denied, 404 U. S. 950, 92 S.Ct. 275, 30 L.Ed.2d 267 (1971). Control over access to the job market may reside, depending upon the circumstances of the case, in a labor organization, an employment agency, or an employer as defined in Title VII; and it would appear that Congress has determined to prohibit each of these from exerting any power it may have to foreclose, on indivious grounds, access by any individual to employment opportunities otherwise available to him. To permit a covered employer to exploit circumstances peculiarly affording it the capability of discriminatorily interfering with an individual's employment opportunities with another employer, while it could not do so with respect to employment in its own service, would be to condone continued use of the very criteria for employment that Congress has prohibited.

A fair reading of the Act in the light of its stated purposes precludes such a result. Section 703(a)(1) provides that:

(a) It shall be an unlawful employment practice for an employer—

(1) to fail or refuse to hire or to discharge any individual, or *other-*

*wise to discriminate against any individual* with respect to his compensation, terms, conditions, or *privileges of employment,* because of such individual's . . . sex. . . . [42 U.S.C. § 2000e–2(a)(1). Emphasis added.]

■ The Act defines "employee" as "an individual employed by an employer," but nowhere are there words of limitation that restrict references in the Act to "any individual" as comprehending only an employee of an employer. Nor is there any good reason to confine the meaning of "any individual" to include only former employees and applicants for employment, in addition to present employees. Those words should, therefore, be given their ordinary meaning so long as that meaning does not conflict with the manifest policy of the Act.

■ The Act, in providing for the filing of complaints with EEOC and of eventual actions in the District Court, does not use the term "employee." The phrase is, rather, the "person aggrieved;" and that term can certainly be taken as comprehending individuals who do not stand in a direct employment relationship with an employer. The fact that the Act purports to provide remedies for a class broader than direct employees is a strong indication that the proscriptions contemplated by Section 703(a)(1) reach beyond the immediate employment relationship.[4] It seems unlikely that Congress would confer standing to bring a suit under the Act upon persons without rights under the Act because they are not employees.

4. When Congress was addressing itself to the question of those who can seek remedial action, it used language reflective of the standing concepts articulated by the Supreme Court as "injury in fact" and an interest "within the zone of those regulated by the statute or constitutional guarantee in question." Association of Data Processing Organizations v. Camp, 397 U.S. 150, 152–153, 90 S.Ct. 827, 830, 25 L.Ed.2d 184 (1970). In Hackett v. McGuire Bros., 445 F.2d 442 (3rd Cir. 1971), the question was whether a former employee, now a pensioner, could maintain an action under Title VII.

Relying upon the statutory definition of an employee, as appellant would have us do here, the trial court ruled that the action was not maintainable. The Court of Appeals, however, held that that definition was not controlling with respect to who might be an aggrieved person within the scope of the remedies provided. The court said that "[a] person to be aggrieved may never have been an employee of the defendant," and that "[a]n aggrieved person obviously is any person aggrieved by any of the forbidden practices . . . . "

Appellant presses upon us the asserted incompatibility of the nature of the remedies referred to in Section 706(g) as supporting its narrow interpretation of Section 703(a)(1). The former provision authorizes the district courts, on finding an intentional violation of the Act, to

enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include reinstatement or hiring of employees, with or without back pay (payable by the employer, employment agency, or labor organization, as the case may be, responsible for the unlawful employment practice). [42 U. S.C. § 2000e–5(g).]

■ Appellant argues that this provision "concerns relief that only an employer can give to its employees." The statutory enumeration of remedies is by its terms, however, illustrative rather than exhaustive; and it also reaches explicitly beyond the context of direct employment to employment agencies and labor organizations. While neither hiring nor reinstatement may be relevant outside the context of direct employment, both injunctive and back pay relief (in the sense of monetary damages for lost employment opportunities) may be available, in an appropriate case, against respondents who are neither actual nor potential direct employers of particular complainants,[5] but who control access to such employment and who deny such access by reference to invidious criteria. On the basis of the facts *alleged*, this is such a case.

■ The question of jurisdiction here is an important one, and we note the fact that the parties have concededly been unable to point to any decided case which is squarely in point. We think it significant that the Act has addressed itself directly to the problems of interference with the direct employment relationship by labor unions and employment agencies—institutions which have not a remote but a highly visible nexus with the creation and continuance of direct employment relationships between third parties. On the facts as alleged, although not yet proved, appellant is so circumstanced, and its daily operations are of such a character as to have such a nexus to the third parties in this case; and we think neither the spirit nor, more essentially, the language of the Act leave it outside the reach of Title VII.

III

On the record as it existed at the time summary judgment was granted, there seems to be no question that appellant and appellee did not contemplate any immediate or future relationship of direct employment in the sense of the usual indicia of such employment. The patient was to be responsible for appellee's compensation, and could reject or terminate his services for any or no reason. Appellant did, however, control the premises upon which those services were to be rendered, including appellee's access to the patient for purposes of the initiation of such employment. What is alleged here is that on two occasions appellant blocked that access and, without reference to the patient, itself determined that a female patient should not have a male nurse. If those allegations are made good by proof, then, as we have indicated hereinabove, we think appellant has brought itself within the strictures of Title VII.

Intent as it was on winning the case without the necessity of trial, by showing the want of the direct employment relationship it deemed essential to the applicability of the Act, appellant was not as sensitive as it should have been to the allegations that it had intruded itself between the patient and appellee. This circumstance undoubtedly gave rise to the District Court's finding of liability on the assumption that these particular allegations had not been disputed, as they should have been, clearly and un-

5. *See, e. g.*, United States v. Wood, Wire and Metal Lathers Int'l. Union, Local 46, 328 F. Supp. 429, 441–445 (S.D.N.Y.1971) (back pay loss assessed against union).

mistakably, in order to protect against the contingency of the failure of appellant's direct employment theory.

Since appellee had not himself moved for summary judgment, however, appellant had less reason to believe that its tactical choice, if unavailing, would deprive it of an opportunity to contest the merits. Counsel for appellant assured this court at oral argument that, given the opportunity, appellant will deny that appellee appeared at the hospital on one of the days in question, and that he was rejected by hospital personnel on the other. In the interests of justice, we think the hospital should be given an opportunity to litigate these basic facts.

In so holding, the court is not relying solely upon counsel's explicit representations at our bar that appellee's allegations will be contested. The specific allegation in the complaint was that, on February 12, 1968, and June 20, 1969, the registry office "provided defendant with plaintiff's name for nursing duty the next day and plaintiff was rejected by defendant because he was not female." [6]

In appellant's Rule 9(h) statement in support of its motion, it is said, in addition to denying generally any policy or practice of discrimination against male nurses, that "the hospital's investigation showed no violation in the case of complainant and that on the date in question, February 12, 1968, hospital records showed that no day calls for private duty nurses had been received; that as calls for particular private duty shifts are received they are entered in the hospital records but there was no record for the date complained of; that the records did show that on February 13, 1968, complainant was referred to a case at the hospital and that in accepting the call complainant through the registry limited his availability to four days; that hospital denied there was any discrimination because of sex. . . ." [7]

Elsewhere in that statement it is said that "[I]f the private duty nurse accepts the assignment, such nurse reports directly to the room number of the patient furnished by the Registry. If the patient or the patient's representative rejects a private duty nurse for any reason, the patient is nonetheless liable for payment of such nurse's fee for that day. . . .," and that appellant "does not decide who may serve as a private duty nurse," nor does it "accept or reject nurses. . . ." We think, thus, that the Rule 9(h) statement, when closely read, provided a significant degree of notice that appellant was not admitting that these incidents occurred as alleged by appellee.

Trial judges are not, of course, without the power to enter sum-

---

6. In appellee's opposition to appellant's motion, the characterization is in these terms: "As the Complaint alleges, Defendant on at least two occasions has made the crucial employment decision by refusing Plaintiff employment as a nurse for female patients."

In the supporting affidavit of appellee, the characterization is as follows:

"On February 12, 1968, and June 20, 1969 (after the June, 1968, circulation of Defendant's antidiscriminatory "Private Duty Protocol"), Affiant was rejected for duty with patients to which Affiant had been assigned, and Defendant's supervisory nurses indicated that the reason for rejection was Affiant's sex."

In view of the fact that it is conceded that the patient was always at liberty to reject the private nurse for any or no reason, there is a certain ambiguity which continues to surround these allegations. However, they do include statements that it was appellant (as distinct from the patient) who denied the employment, and thus there is an issue of fact to be resolved as to just what did happen.

7. Nowhere does the statement address itself directly to the alleged incident on June 20, 1969, as distinct from the one on February 12, 1968. This appears to be due to the fact that the Rule 9(h) statement consists in substantial part of a description of the representations made by appellant to the EEOC at the time it was summoned to respond to appellee's complaint. That complaint, as filed on July 24, 1968, naturally referred only to the February 12, 1968, incident. Appellant's representations in response to it were made prior to the date of the second incident alleged in the District Court action, namely, June 20, 1969.

mary judgment *sua sponte.*[8] It is, in any event, one to be cautiously used. In this case, where the defendant had not as yet answered the complaint, and no oral argument was heard, an exercise of sound discretion might well have required that a motion for summary judgment, had plaintiff made one, be denied.[9] Absent an affirmative indication that the facts would indeed be undisputed once jurisdiction was determined to exist, it was not the part of careful adjudication to enter summary judgment *sua sponte*, although we recognize that the contribution of appellant to the making of that error was not insubstantial.

The judgment appealed from is reversed and the case remanded for further proceedings consistent herewith.

It is so ordered.

---

8. *See* 6 Moore, Federal Practice ¶56.12, at 2241–42 (2d ed. 1972), and cases there cited.

9. Moore, *supra*, suggests as a test that the trial court "be reasonably certain that [summary] judgment can be justly rendered without the necessity of trial." *Cf.* Hudson v. Hardy, 134 U.S.App.D.C. 44, 412 F.2d 1091 (1968).