**Judith A. PELECH, Plaintiff,**

v.

**KLAFF–JOSS, LP; Robert Davis, an individual; Heatherton Staff Leasing, Ltd., an Illinois corporation; Crescent Cleaning Company, a Delaware corporation; Harry Finkel, an individual; Safeguard Security, Inc., an Illinois corporation; and Steven Rowley, an individual, Defendants.**

**No. 92 C 7127.**

United States District Court, N.D. Illinois, E.D.

March 4, 1993.

---

George Vernon, Leng, Stowell, Friedman & Vernon, Nancy K. Baker, Law Office of Nancy K. Baker, Chicago, IL, for Judith A. Pelech.

Steven R. Peltin, Mary Ellen Nelligan, Altheimer & Gray, Irving M. Geslewitz, Much, Shelist, Freed, Denenberg, Ament & Eiger, P.C., Chicago, IL for Klaff–Joss, LP, and Robert Davis.

Joseph Michael Gagliardo, James J. Convery, Peter Louis Albrecht, Laner, Muchin, Dombrow, Becker, Levin & Tominberg, Ltd., Chicago, IL, for Heatherton Staff Leasing, Ltd.

Irving M. Geslewitz, Much, Shelist, Freed, Denenberg, Ament & Eiger, P.C., Chicago, IL, for Crescent Cleaning Co., Harry Finkel, Safeguard Sec., Inc. and Steven Rowley.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Plaintiff Judith A. Pelech ("Pelech") brings this civil rights action against Klaff–Joss, L.P., Robert Davis, Crescent Cleaning Company, Harry Finkel, Safeguard Security, Inc., and Steven Rowley alleging unlawful gender discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended (the "Act"). 42 U.S.C. §§ 2000e *et seq.* Presently before us is Crescent Cleaning Company ("Crescent") and Harry Finkel's ("Finkel") combined motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. For the reasons set forth below, we deny the motion.

### I. Factual Background [1]

For the purposes of the present motion, the facts underlying this dispute are as follows:

Beginning in May, 1987, Pelech was employed by Aegis Security Company ("Aegis") as a part-time security guard for the building located at 111 West Jackson Street in Chicago. Klaff–Joss owned the building, and Crescent, under contract to Klaff–Joss, provided cleaning services. In November, 1987, Aegis promoted Pelech to full-time security supervisor for the building.

Between August 1988 and June 1991, Pelech, while still employed by Aegis as a security supervisor, temporarily filled in for the position of elevator starter to cover the holiday and vacation absences of the permanent elevator starter. During this time, Pelech adequately performed both jobs.

In June, 1991, Pelech learned that the permanent elevator starter was retiring, leaving his position open. Armed with this news, Pelech informed Finkel, the chairman of Crescent, and Davis, the building manager at 111 West Jackson Street, that she wished to be considered for the position. According

---

1. Of course, in considering a motion to dismiss, the court accepts the factual allegations of the complaint as true. *See Hughes v. Rowe*, 449 U.S. 5, 10, 101 S.Ct. 173, 176, 66 L.Ed.2d 163 (1980) (per curiam) (*citing Cruz v. Beto*, 405 U.S. 319, 322, 92 S.Ct. 1079, 1081, 31 L.Ed.2d 263 (1972)). Furthermore, we will not dismiss unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

to Pelech, Klaff–Joss had the final authority to hire the replacement, but Finkel was responsible for interviewing and recommending applicants. Although Pelech had substituted for the elevator starter for close to three years, she was not interviewed for the job, and in July, 1991, Finkel and Davis decided to hire a man.

When Pelech confronted Davis to ask him why she was not considered for the opening, he allegedly informed her that she was "not qualified," and was not the person they were looking for. Cmplt. at ¶ 25. Unsatisfied with this explanation, Pelech telephoned her union representative to complain that she had been denied consideration for the position because of her gender. In addition to calling her union representative in front of management personnel, Pelech openly advertised her conviction that she had been denied the elevator starter position because she was a woman.

In September, 1991, Safeguard Security, Inc. ("Safeguard") assumed Aegis' security contract at 111 West Jackson. Shortly thereafter, Finkel, Davis, and Rowley, the president of Safeguard, summoned Pelech into a meeting and allegedly informed her that unless she "smiled more," she would lose her job. In October, 1991, Pelech was accused of stealing a co-worker's personal calculator. Accordingly, on October 28, 1991, Rowley fired her from her position as security supervisor and dismissed her from Safeguard.

On March 16, 1992, Pelech filed charges of gender discrimination and retaliation against Klaff–Joss, Davis, Crescent, Finkel, Safeguard, and Rowley with the Equal Employment Opportunity Commission ("EEOC"). On October 6, 1992, the EEOC issued a "right to sue" letter.

## II. Discussion

Crescent, and its Chairman, Finkel, argue that Pelech has failed to allege an employment relationship with them, and therefore cannot recover against them under Title VII. A review of Title VII case law, however, reveals that this contention misses the point. Although courts have held that the Civil Rights Act of 1964 "contemplates some employment relationship," this relationship need not necessarily be solely between the plaintiff and defendant. Thus, despite the fact that Pelech was not directly employed by Crescent or Finkel, in certain circumstances, they still may be held liable under Title VII.

Title VII provides in relevant part:

(a) It shall be an unlawful employment practice for an employer-

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex or national origin;

42 U.S.C. § 2000e–2(a)(1). The statutory language of Title VII is broad and has been interpreted to encompass more than the traditional employer-employee relationship. This interpretation derives from the statute's use of the term "any individual," instead of "employee." *See Doe on Behalf of Doe v. St. Joseph's Hospital,* 788 F.2d 411, 422 (7th Cir.1986); *Sibley Memorial Hospital v. Wilson,* 488 F.2d 1338, 1341 (D.C.Cir.1973). Absent compelling evidence that "any individual" should be construed to mean only an employee of an employer, courts have consistently held that Title VII should be read "liberally so as to further the goals and purposes of eliminating discrimination in employment."[2] *Doe,* 788 F.2d at 422. *See also Unger v. Consolidated Foods Corp.,* 657 F.2d 909, 915 n. 8 (7th Cir.1981), *vacated on other grounds,* 456 U.S. 1002, 102 S.Ct. 2288, 73 L.Ed.2d 1297 (1982); *Armbruster v. Quinn,* 711 F.2d 1332, 1336 (6th Cir.1983).

In a line of cases descending from *Sibley,* courts have held that Title VII may apply even in the absence of a direct employment relationship between the plaintiff and defendant when a defendant interferes in a plaintiff's employment opportunities with a third party where the defendant controls access to those opportunities. *Sibley,* 488 F.2d 1338; *Doe,* 788 F.2d at 422–23; *Vakharia v. Swedish Covenant Hospital,* 765 F.Supp. 461, 465–66 (N.D.Ill.1991). *Sibley* involved a private

2. Title VII defines "employee" as an individual employed by an employer.

male nurse who complained that, because of his gender, the defendant hospital refused to permit him to report to female patients requesting private nursing care. Although the court found no employment relationship between the nurse and the hospital, the court observed that the hospital's behavior nonetheless ran afoul of Title VII's objective of ensuring equal employment opportunity. Specifically, while the defendant hospital did not employ the plaintiff, it interfered with the plaintiff's ability to obtain employment with patients.

In keeping with *Sibley,* courts in this circuit have similarly found that in enacting Title VII, Congress sought "to prohibit any employer with control over access to the job market from foreclosing, for invidious reasons, those opportunities to individuals." *Vakharia,* 765 F.Supp. at 464. *See also Doe,* 788 F.2d 411. The *Vakharia* court reasoned that to permit an employer to discriminatorily deny individuals access to employment opportunities with third parties, while preventing such conduct with regard to its own employees, would be to sanction the very behavior Title VII sought to eliminate. *Id.* Accordingly, the court held that a plaintiff may proceed under Title VII if s/he can establish that the defendant barred plaintiff's access to employment with another party for discriminatory reasons.[3] *Id. See also Doe,* 788 F.2d at 423.

This is exactly the conduct with which Crescent and Finkel are charged. Although it appears that Davis, on behalf of Klaff-Joss, had the ultimate responsibility for selecting and hiring the elevator starter, Pelech alleges that "Finkel, as chairman of Crescent, was in the position to interview and recommend the hire of the person to fill the elevator started position." Cmplt. at ¶ 41. Pelech further alleges that Crescent and Finkel abused that power by refusing to interview or consider her for the position because of her gender.

Because Pelech need not have alleged an employment agreement between herself and Crescent or Finkel[4], and because her allegations support a reasonable inference that Finkel, on behalf of Crescent, was in a position to control Pelech's employment opportunities with Klaff-Joss, we deny Crescent and Finkel's motion to dismiss.

### III. Conclusion

For the foregoing reasons, we deny defendants' combined motion to dismiss.

It is so ordered.

---

**3.** In so doing, the *Vakharia* court acknowledged that in *Shrock v. Altru Nurses Registry,* 810 F.2d 658 (7th Cir.1987), the Seventh Circuit "cast some doubt on the proposition that a defendant could be liable under Title VII for interference with a plaintiff's employment opportunities with third parties, [when it observed] that it 'need not decide when, *if ever,* an employer covered by [title VII] can be held liable for conduct toward someone who is not its employee.'" *Vakharia,* 765 F.Supp. at 464 (quoting *Shrock,* 810 F.2d at 660)). However, because the *Shrock* court left the question open, this court, like the *Vakharia*

court, are bound by *Doe,* which clearly holds that this sort of claim is cognizable under Title VII.

**4.** Because Pelech need not allege an employment agreement between herself and Crescent or Finkel, defendants reliance on *Knight v. United Farm Bureau Mutual Insurance,* 950 F.2d 377, 380 (7th Cir.1991) and the line of cases devoted to determining when an employment relationship exists, is inapposite. There is no dispute that Pelech was employed by Safeguard and sought a clearcut employment relationship with Klaff-Joss as an elevator starter.