Trayon REDD, Plaintiff,

v.

Robert E. RUBIN, et al., Defendant.

No. Civ.A. 97CV1303 CKK.

United States District Court,
District of Columbia.

Sept. 4, 1998.

**2**

Leizer Z. Goldsmith, Law Office of Leizer Goldsmith, Washington, D.C., for plaintiff Redd.

Doris D. Coles–Huff, U.S. Attorney's Office, Washington, D.C., Ronald Jessamy, Sr., Jordan, Keys, Jessamy, Botts, Washington, D.C., for defendant Rubin.

## MEMORANDUM OPINION

KOLLAR–KOTELLY, District Judge.

In an Amended Complaint, the Plaintiff, Trayon Redd, alleges that the Defendant, Robert Rubin violated the Rehabilitation Act of 1973, 29 U.S.C. §§ 791, 794 (1994) ("Act"), and that Defendants Armentha Cruise–Mills, and Aspen Temporary Services, Inc., violated the District of Columbia Human Rights Act (DCHRA), by discriminating against her on the basis of disability, namely obesity. Before the Court is Defendant Rubin's Motion to Dismiss, or, in the alternative, for Summary Judgment. Defendant Rubin seeks a dismissal of the case on the grounds that because the Plaintiff was not an employee of the Department of Treasury, the Plaintiff has failed to state a claim upon which relief may be granted, and therefore the Court is without jurisdiction over her Amended Complaint. Having considered the Motion, the Opposition, the Reply, the Surreply, and the relevant law, this Court concludes that the Plaintiff has stated a claim upon which relief may be granted, and therefore, the Court does possess subject matter jurisdiction over the action against Defendant Rubin. Defendant Rubin's Motion will be denied.

### I. Factual Background

The Plaintiff is a female approximately five feet, seven inches tall, weighing approximately 320 pounds. Her physical condition meets the accepted medical definition of morbid obesity. (Am.Compl.¶ 12.) Plaintiff was hired as a tour guide by Defendant Aspen Temporary Services, Inc. ("Aspen"), an employment agency, in June 1995. (Am. Compl.¶ 17.) Aspen had a contract ("contract") with the Bureau of Engraving and Printing ("BEP"), a subagency of the Department of Treasury, to provide tour guide personnel for BEP's offices in Washington, D.C. (Am.Compl.¶ 14–15.) The contract provided for an Agency employee, known as the Contracting Officer's Technical Representative ("COTR"), to be responsible for the oversight of the contract. Antoinette Banks was the COTR for the instant contract. (Def.'s Mot. to Dismiss, Ex. A at 26.) The contract also established a lead tour guide, who was responsible for supervising scheduling, selecting, and training all tour guides.

(Def.'s Mot. to Dismiss Ex. A at 10.) Henrietta Walls was employed by Aspen in this capacity.

Plaintiff alleges that shortly after she was hired, Banks suggested both to the Plaintiff and the Plaintiff's mother that she had misgivings about Plaintiff's ability to perform as a tour guide because of her weight. (Am. Compl.¶ 21–23.) Nevertheless, Plaintiff was trained for the position and performed as a tour guide from September, 1995, to March, 1996. (Am.Compl.¶ 24.) On several occasions, Plaintiff received positive written and oral comments from tourists regarding her work. (Am.Compl.¶ 26.)

Plaintiff alleges that between September, 1995 and March, 1996, Walls and Banks made several disparaging comments about Plaintiff's eating habits and weight. (Am. Compl.¶ 27.) Around March 12, 1996, Banks and Walls had a meeting with Plaintiff to discuss alleged deficiencies in her tour, although Plaintiff claims that neither supervisor would state what those deficiencies were besides that Plaintiff had mispronounced one word. (Am.Compl.¶ 31.) Plaintiff alleges that Banks and Walls then informed her that she needed to memorize and recite, word for word, the tour "spiel" that Banks used, and that if she failed to do so prior to her evaluation the following week, she would not receive an acceptable performance evaluation. (Am.Compl.¶ 32–33.) Plaintiff alleges that she was then demoted from her tour guide duties, and assigned only to collect tickets and assist visitors in the visitor center. (Am. Compl.¶ 35.) Plaintiff claims that no other tour guides were required to memorize and recite Banks's tour spiel, word for word, and that other tour guides, whose tours were of similar quality to Plaintiff's, were not disciplined or warned regarding their performance. (Am.Compl.¶¶ 36–37.)

On March 14, 1996, Plaintiff gave a memorandum to Banks and Walls, in which she responded to their criticism of her work, and in which she requested a written copy of the tour spiel so she could memorize it as required. (Am.Compl.¶ 39.) Plaintiff states that she never received a hard copy of the tour spiel but was permitted to perform a single tour on March 21, 1996, for the purpose of being evaluated by Banks. (Am. Compl.¶¶ 42–42.) Both parties agree that the tour went well. (Am. Compl. ¶ 43; Def.'s Answer to Am. Compl. ¶ 43.)

Plaintiff alleges that despite performing well on March 21, 1996, she was removed again from her tour guide duties, and neither Banks nor Walls would provide her with a reason for why they removed her. (Am. Compl.¶¶ 45–46.) During her break, Plaintiff made a telephone call to her mother, Ethelyn Redd, because she was upset. (Am. Compl.¶ 47.) Banks allegedly demanded to speak to Ethelyn Redd and Plaintiff passed the phone to Banks. (Am.Compl.¶¶ 48–49.) Banks admitted to Ethelyn Redd that other employees had mispronounced words and had "done worse things." (Am.Compl.¶¶ 51–52.) After Ethelyn Redd allegedly suggested to Banks that Plaintiff was being discriminated against because of her size, Banks allegedly became angry and defensive. (Am. Compl.¶¶ 54–55.) Banks then paged Plaintiff to report to her office immediately and angrily ordered Walls to "give this girl her evaluation." Two hours later, Walls informed Plaintiff that her performance evaluation was not high enough to meet the required standards. (Am.Compl.¶¶ 56–58.) Although Walls then informed Plaintiff that she was being fired for unsatisfactory performance, she refused to provide Plaintiff with a copy of the document that Walls claimed was the performance evaluation. Plaintiff was then immediately removed from her tour guide duties and ordered to return her keys that same day. (Am.Compl.¶¶ 59–62.)

In April, 1996, Plaintiff wrote to Aspen to complain about her improper removal from BEP. (Am.Compl.¶ 63.) In response, Aspen told Plaintiff she would be restored to her position in May, 1996. (Am.Compl.¶ 64.) The night before she was scheduled to return to work, however, an Aspen representative instructed Plaintiff not to report to work because Aspen still had to work out some "technical difficulties" with BEP. (Am. Compl.¶¶ 65–66.) In July, 1996, Plaintiff received a letter from Aspen stating it was required to fire Plaintiff because of "contractual guidelines." (Am.Compl.¶ 67.)

In January, 1997, Plaintiff filed a formal administrative complaint of disability discrimination and reprisal with the Department of the Treasury and received a final decision dismissing her charge in March, 1997. (Am.Compl.¶¶ 8–9.) Plaintiff timely filed this action within 90 days of her receipt of the Agency's final decision pursuant to 42 U.S.C. § 2000e–5(f) (1994). (Am. Compl.¶ 10.)

## II. Discussion

The Plaintiff purports to state a claim under sections 501 and 504 of the Rehabilitation Act of 1973, 29 U.S.C. §§ 791, 794. *See* Am. Compl. ¶¶ 73, 74. Defendant Robert Rubin filed a motion to dismiss arguing that the Plaintiff is not an employee of the federal government, and therefore that she has failed to state a claim of employment discrimination pursuant to the Rehabilitation Act. According to the Defendant, this action, apart from failing to state a cognizable claim, must be dismissed for lack of subject matter jurisdiction because the United States has not waived sovereign immunity under the Rehabilitation Act unless the Plaintiff properly states a claim thereunder. Thus, the Defendant moves to dismiss the action under both Federal Rules of Civil Procedure 12(b)(6), for failure to state a claim upon which relief can be granted, and 12(b)(1), for lack of subject matter jurisdiction. Consequently, if the Plaintiff has stated a claim under the Rehabilitation Act, then sovereign immunity has been waived, and the Court has subject matter jurisdiction.

When reviewing a 12(b)(6) motion to dismiss, the Court must take the allegations in the non-moving party's pleading as true and must construe them in the light most favorable to the non-moving party. *See Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Thus, a motion to dismiss may not be granted "unless it appears that a plaintiff can prove no facts in support of the claim which would entitle the plaintiff to relief." *Id.* Here, however, the Defendant challenges the Plaintiff's assertion in the Complaint that she is an employee of the

Defendant by relying on materials outside the pleadings. Accordingly, the Court will evaluate the motion as one for summary judgment under Federal Rules of Civil Procedure 56(c). *See* Fed.R.Civ.P. 12(c) ("If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56.").

In assessing a motion for summary judgment, the movant bears the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Thereafter, the nonmoving party must "go beyond the pleadings and by [its] own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" 477 U.S. at 324, 106 S.Ct. 2548. In deciding a motion for summary judgment, the court must believe all of the evidence produced by the nonmovant, and must draw all favorable inferences in favor of the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Ultimately, the court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." 477 U.S. at 251, 106 S.Ct. 2505.

### A. Section 501 of the Rehabilitation Act

Section 501 of the Rehabilitation Act of 1973, 29 U.S.C. § 791, forbids the federal government from discriminating on the basis of disability. Although the language of the statute itself does not explicitly prohibit discrimination by a federal entity,[1] the regula-

---

1. A literal reading of 29 U.S.C. § 791 indicates that the this section only requires the federal government to take affirmative action in employing the disabled. § 791(b) states:

tions promulgating the statute do. Section 1614.101(a) of the Code of Federal Regulations states that it is the policy of the federal government "to prohibit discrimination in employment because of . . . handicap." 29 C.F.R. § 1614.101(a)(1997). Section 1614.203, which pertains directly to the Rehabilitation Act, states in subsection (b) that "[a]n agency shall not discriminate against a qualified individual with physical or mental handicaps." 29 C.F.R. § 1614.203(b) (1997).

In addition, the 1978 Amendments to the Act explicitly created a private cause of action to persons alleging handicap discrimination by the federal government under section 501 of the Act. *See* 29 U.S.C. § 794a(a)(1) (1994).[2] This section affords an individual alleging handicap discrimination the remedies, procedures, and rights of Title VII of the Civil Rights Act of 1964. *See id.* Title VII remedies require a final agency decision before an individual can file a civil action. *See* 42 U.S.C. § 2000e-16(c) (1994).

 For the Plaintiff to state a claim pursuant to section 501, and for this Court to have jurisdiction under this provision, the Plaintiff must demonstrate that she was an employee of the federal agency that she is suing, here the Department of Treasury. The Plaintiff's purported obstacle in proving this fact is that her direct employer was Aspen, which contracted with the Department of Treasury to provide tour guides;

she was not contractually employed by the Department itself. The fact that the Defendant terms the Plaintiff as an employee of an independent contractor is not dispositive, because even where an explicit employer/employee relationship is lacking, courts have decided that an employment relationship exists nonetheless. *See, e.g., Spirides v. Reinhardt,* 613 F.2d 826 (D.C.Cir.1979); *Sibley Mem'l Hosp. v. Wilson,* 488 F.2d 1338, 1341 (D.C.Cir.1973); *see also Holt v. Winpisinger,* 811 F.2d 1532, 1539–40 (D.C.Cir.1987). For example, in *Sibley Mem'l Hosp. v. Wilson,* another Title VII case, the D.C. Circuit held that the Title VII definition of "employee" did not limit its meaning to only an "employee of an employer." 488 F.2d at 1341. The *Sibley* court considered it significant that Title VII addresses situations where there is "not a remote but a highly visible nexus with the creation and continuance of direct employment relationships between third parties." *Id.* at 1342. Thus, while the Defendant in the current case is correct in asserting that Aspen is the Plaintiff's employer, such a fact does not necessarily preclude this Court from finding that Defendant also was the Plaintiff's employer for purposes of her discrimination claim, for an employee may have more than one employer in this context. *See Richard v. Bell Atlantic Corp.,* 946 F.Supp. 54, 59 (D.D.C.1996).

 In deciding whether the Plaintiff is an employee for purposes of the Rehabilita-

---

Each department, agency, and instrumentality (including the United States Postal Service and the Postal Rate Commission) in the executive branch shall, within one hundred and eighty days after September 26, 1973, submit to the Commission and to the Committee an affirmative action program plan for the hiring, placement, and advancement of individuals with disabilities in such department, agency, or instrumentality. Such plan shall include a description of the extent to which and methods whereby the special needs of employees who are individuals with disabilities are being met. Such plan shall be updated annually, and shall be reviewed annually and approved by the Commission, if the Commission determines, after consultation with the Committee, that such plan provides sufficient assurances, procedures and commitments to provide adequate hiring, placement, and advancement opportunities for individuals with disabilities.

29 U.S.C. § 791(b). There is no explicit language prohibiting discrimination by the federal

government. The regulations implementing the statute, however, do contain an explicit prohibition of handicap discrimination by the federal government.

2. 29 U.S.C. § 794a(a)(1) states in relevant part:

The remedies, procedures, and rights set forth in section 717 [Title VII] of the Civil Rights Act of 1964 (42 U.S.C. § 2000e-5(f) through (k)), shall be available, with respect to any complaint under section 791 of this title, to any employee or applicant for employment aggrieved by the final disposition of such complaint, or by the failure to take final action on such complaint. In fashioning an equitable or affirmative action remedy under such section, a court may take into account the reasonableness of the cost of any necessary work place accommodation, and the availability of alternatives thereof or other appropriate relief in order to achieve an equitable and appropriate remedy.

tion Act, the Court must look to the "'economic realities of the work relationship' [by] apply[ing] general principles of the law of agency to undisputed or established facts." *Spirides*, 613 F.2d at 831 (citing *Deaton Truck Line, Inc. v. NLRB*, 337 F.2d 697, 699 (5th Cir.1964)). The common-law rules of agency dictate that the Court's determination must be based on a consideration of all circumstances involving the work relationship. *See id; see also Holt*, 811 F.2d at 1538; *Building Material v. National Labor Relations Board*, 669 F.2d 759, 764 (D.C.Cir.1981) (noting that agency principles require examination of all aspects of the relationship). While the Court's decision does not turn on any single factor, "the extent of the employer's right to control the 'means and manner' of the worker's performance is the most important factor to review here, as it is at common law and in the context of several other federal statutes." *Spirides*, 613 F.2d at 831 (footnotes omitted)

■ The terms of the contract may be relevant to ascertaining the intent of the parties, but such terms are not paramount in the inquiry. *Id.* In *Spirides*, the district court, in concluding that the plaintiff was not an employee, relied almost solely on the terms of the contract, which defined the plaintiff as a vendor. *See id.* at 832. The United States Court of Appeals for the D.C. Circuit held that the district court erred in taking such a constrained view of the facts, and by limiting the inquiry to the contract. *See id.* at 833. The Court of Appeals concluded that "if an employer has the right to control and direct the work of an individual, not only as to the result to be achieved, but also as to the details by which that result is achieved, an employer/employee relationship is likely to exist." *Id.* While other factors also are relevant in evaluating this relationship,[3] the most important factor is the degree of the employer's control over the worker's performance. *Id.*

**3.** For example, the court noted the relevancy of: (1) the kind of work performed, and in particular, whether the work usually is done under supervision, (2) the amount of skill required, (3) whether the employer in question furnished the equipment used and the place of work, (4) the length of the time the individual has worked, (5) the method of payment, (6) the manner in which

The Defendant suggests that since the contract with Aspen incorporated all of the relevant circumstances surrounding the work relationship of the tour guide, this Court should distinguish the instant claim from *Spirides*, and thereby conclude that the Plaintiff was not the Defendant's employee. This argument demonstrates that the Defendant mistakes the holding of *Spirides*. The proper analysis of the instant case requires an examination of the actual working relationship between Banks and the Plaintiff, beyond what merely is written in the contract, as inclusive as that contract may be. *See Spirides*, 613 F.2d at 833; *accord C.C. Eastern, Inc. v. NLRB*, 60 F.3d 855, 858 (D.C.Cir. 1995).

■ In applying the foregoing principles to the current case, the Court acknowledges that the Defendant did not pay either retirement benefits, or income or social security taxes. Moreover, the Defendant did not offer any annual leave to the tour guides employed by Aspen. Yet these factors alone do not compel the Court to deny the existence of an employment relationship. *See, e.g., Holt*, 811 F.2d at 1540–41 (agreeing that plaintiff's compensation procedures differed from those of other employees, but finding that degree of control over circumstances of work was more significant factor in the analysis). The Plaintiff's recitation of the facts, to which the Defendant has not presented any contrary evidence, establish the existence of the most significant factor cited by the *Spirides* court: control. Antoinette Banks, as the COTR, was the Agency employee responsible for overseeing the contract between Aspen and the Department of Treasury. (Def.'s Mot. to Dismiss, Ex. A at 26.) Banks, along with Henrietta Walls, who was the lead Aspen tour guide, controlled which assignments were given to Plaintiff. (Am.Compl.¶¶ 28–35, 42, 45). Plaintiff also appeared to report

the work relationship was terminated, (7) whether annual leave is afforded, (8) whether the work is an integral part of the business of the "employer," (9) whether the worker accumulates retirement benefits, (10)whether the "employer" pays social security taxes, and (11)the intention of the parties.

primarily to the both of them. (Am. Compl. ¶¶ 19–20). Banks, together with Walls, called the March 12, 1996 meeting to discuss the quality of Plaintiff's tours and was present during that meeting. (Am. Compl. ¶¶ 28, 30.) Banks was also the person who instructed Plaintiff that she had to memorize the spiel that Banks used for the tours in order to pass her evaluation. (Am. Compl. ¶¶ 32.) Finally, that Banks ordered Walls to give Plaintiff her evaluation which resulted in her termination suggests that Banks had a significant degree of influence, if not control, over Plaintiff's firing. (Am. Compl. ¶¶ 57–59.) In addition, the Defendant furnished the equipment used by the Plaintiff, as well as her place of work. (Def.'s Mot. to Dismiss Ex. A at 13, 17.) Thus, the Defendant, through Banks, had a "highly visible nexus" with Plaintiff's performance of her work. *See Sibley*, 488 F.2d at 1342.

The Court's conclusion that the Plaintiff has raised a genuine issue of facts regarding the. existence of employment relationship is not undermined by the fact that Banks may not have had the ultimate and sole authority to terminate the Plaintiff. A "supervisory employee need not have ultimate authority to hire or fire to qualify as an employer, as long as he or she has significant input into such personnel decisions." *Paroline v. Unisys Corp.* 879 F.2d 100, 104 (4th Cir.1989). "An individual qualifies as an 'employer' under Title VII if he or she serves in a supervisory position and exercises significant control over the plaintiff's hiring, firing or conditions of employment." *Id.*

Consequently, the Court finds that the Defendant has not established as a matter of law that the Plaintiff has not asserted facts sufficient to support her claim that the Defendant was her employer under the *Spirides* analysis. Therefore as to the Plaintiff's action based on section 501 of the Rehabilitation Act, this Court must deny the Defendant's Motion to Dismiss, or, in the Alternative, for Summary Judgment.

## B. Section 504 of the Rehabilitation Act

The Plaintiff also makes a claim under section 504 of the Rehabilitation Act which prohibits discrimination against the handicapped "under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency." 29 U.S.C. § 794(a).[4] Thus, the federal government additionally is prohibited from discriminating on the basis of handicap through any of its activities. The Defendant's position with respect to the validity of the Plaintiff's claim under this section mirrors his argument regarding the section 501 claim: the Plaintiff is not an employee, and therefore has no cause of action against the Defendant pursuant to section 504.

The Court has already determined that the Plaintiff has presented an issue of fact regarding the existence of an employment relationship with the Defendant. Consequently, the Defendant's stated basis for dismissing the section 504 claim, i.e. that the Plaintiff is not an employee, is without merit. Alternatively, the Defendant appears to argue that even if the Plaintiff is an employee, her employment discrimination claim must be asserted only pursuant to section 501, and not 504. In support of this latter argument, the Defendant relies on *Barth v. Gelb*, 2 F.3d 1180 (D.C.Cir.1993), in which the Court of Appeals reiterated its position that it is "'strongly suggest[ed]'" that litigants proceed under section 501 "when charging the defendant with employment discrimination." *See id.* at 1183 (quoting *Milbert v. Koop*, 830 F.2d 354, 357 (D.C.Cir.1987)).

The circuit courts have split over whether a plaintiff may bring suit against the federal government under both section 501 and section 504 for claims of discrimination in employment. *Compare Boyd v. United States Postal Serv.*, 752 F.2d 410 (9th Cir.1985) *with Prewitt v. United States Postal Serv.*, 662 F.2d 292 (5th Cir.1981). *See also Barth*, 2 F.3d at 1183. In *Milbert*, our Circuit did not explicitly decide whether a plaintiff can proceed under both sections 504 and 501, but it

4. While section 504 does not explicitly state that there is a private cause of action, most circuits that have considered the issue have found such a right to exist. *See, e.g., Milbert v. Koop*, 830 F.2d 354, 355 (D.C.Cir.1987).

did "strongly suggest" that in the future, plaintiffs who seek relief against a federal agency for employment discrimination should proceed under section 501 instead of section 504. *Id.* at 356; *see also Barth v. Gelb,* 2 F.3d 1180 (D.C.Cir.1993).

Given this Circuit's admonition that employment discrimination claims against federal agencies should be brought pursuant to section 501, the Court would be inclined to dismiss the section 504 claim if it were based on an allegation of employment discrimination. The Plaintiff's theory under section 504 is not one of *employment* discrimination, however. In her Complaint, the Plaintiff's allegations with respect to section 504 involve the assertion that the Defendant discriminated against her "by refusing [her] participation in provision of tour guide services at BEP." *See* Am. Compl. ¶ 79. In her Opposition to Defendant's Motion to Dismiss as well as her Sur–Reply she elaborates on her section 504 claim by clarifying that she asserts this action not as an employee, but as a participant in an activity. (Pl.'s Mem. of P. & A. in Opp. to Def.'s Mot. to Dismiss at 8; Pl.'s Sur–Reply in Opp'n to Def.'s Mot. to Dismiss at 1–3.) This alternative theory is based upon the claim that Defendant did not actually fire Plaintiff, but used discriminatory administrative methods through its contract with Aspen to secure her termination. (Pl.'s Mem. of P. & A. in Opp. to Def.'s Mot. to Dismiss at 6.) Indeed, section 17.130(b)(4)(i) of the Code of Federal Regulations, cited by Plaintiff, makes it clear that the Plaintiff's alternative theory pursuant to section 504 should survive the Motion for Summary Judgment. This section states that an agency "cannot, directly or through contractual or other arrangements, use criteria or methods of administration the purpose or effect of which would subject qualified individuals with handicaps to discrimination on the basis of handicap." 31 C.F.R. § 17.130(b)(4)(i) (1997). The record is sufficient to state a claim that Banks participated in the Plaintiff's exclusion from an agency activity.

### C. The Request for Compensatory Damages

■ In the Amended Complaint, the Plaintiffs prayer for relief includes a request for compensatory damages, but does not specify pursuant to which statutory provision she makes this demand. The Supreme Court has declared that the United States has not waived its sovereign immunity against money damages sought pursuant to 29 U.S.C. § 794. *See Lane v. Pena,* 518 U.S. 187, 116 S.Ct. 2092, 2097–98, 135 L.Ed.2d 486 (1996). Nonetheless, the Plaintiff may request damages pursuant to section 501, 29 U.S.C. § 791. *See* 29 U.S.C. § 794a(a)(1); 42 U.S.C. § 1981a(2). Accordingly, Plaintiff's entitlement to damages, if any at all, would be recovered only under section 501.

### III. Conclusion

Although Plaintiff is not a direct employee of the Defendant, she has raised a genuine issue of material facts that she maintained an employer-employee relationship for purposes of section 501 of the Rehabilitation Act. In addition, Plaintiff also has stated a claim under section 504 of the Act. Thus, the Motion to Dismiss, or, in the Alternative, for Summary Judgment, is denied.