IN THE COURT OF APPEALS OF TENNESSEE

WESTERN SECTION AT JACKSON

_____



FILED

**December 4, 2001**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

| | |
|---|---|
| SANDY SANDERS, | ) Dyer Chancery Court |
| | ) No. 93-166 |
| Plaintiff-Appellant, | ) |
| | ) |
| v. | ) |
| | ) |
| DAVID W. LANIER, IN HIS | ) |
| INDIVIDUAL AND IN HIS | ) |
| OFFICIAL CAPACITIES, AND | ) C/A NO. 02A01-9412-CH-00276 |
| THE STATE OF TENNESSEE, | ) |
| | ) |
| Defendants-Appellees. | ) |

_____

From the Chancery Court of Dyer County at Dyersburg,
**Honorable William H. Inman, Senior Judge, Sitting by Designation.**

**Jerrold L. Becker** and **Scarlett A. Beaty**,
LOCKRIDGE, BECKER & VALONE, P.C., Knoxville, Tennessee,
Attorney for Plaintiff-Appellant.

**Charles W. Burson,** Attorney General and Reporter, and
**S. Elizabeth Martin**, Assistant Attorney General, Nashville, Tennessee,
For Appellee, State of Tennessee.

OPINION FILED:

**REVERSED AND REMANDED**

**FRANKS, J.**


**CRAWFORD, P. J. (W.S.):** (Concurs)
**FARMER, J.:** (Concurs)




Plaintiff's action filed against the State pursuant to the Tennessee Human Rights Act (THRA), Tennessee Code Annotated §4-20-191, *et seq.,* was dismissed by the Trial Judge for failure to state a cause of action. T.R.C.P. Rule 12.02(6).

Plaintiff alleged she is employed as a Youth Services Officer with the Juvenile Court of Dyer County, Tennessee. This position is compensated by the County[1]. She alleged that she was sexually harassed by Chancellor David Lanier, a State judge, who presided over both Chancery and County Juvenile Court[2]. She avers that when she rejected his

_____

[1]  T.C.A. §37-1-106.

[2]  1972 Public Acts 1676-1680, Ch. 863 (creating a law and equity court in Dyer County, TN) reads in part:

> Section 1. There is hereby created the Law and Equity Court for Dyer County, Tennessee, the jurisdiction of which shall be co-extensive with Dyer County.
>
> Section 2. The Law and Equity Court for Dyer County shall have concurrent jurisdiction with the Chancery Court of Dyer County and the Circuit Court of Dyer County, and said Court and the Judge thereof shall be vested with all the common law and statutory powers of the Chancery Courts, and the Circuit and Law Courts, and the judges thereof . . .
>
> Section 11. The Judge of the Law and Equity Court of Dyer County, Tennessee shall have and exercise all probate jurisdiction and all juvenile jurisdiction of all juvenile cases arising within Dyer County, Tennessee, and the County Clerk of Dyer County, Tennessee shall continue to maintain his

advances, the Chancellor demoted her, and she brought this action alleging sexual discrimination in employment.

The Trial Court determined that the State of Tennessee was not plaintiff's ?employer? for the purposes of THRA. Before the Trial Court, plaintiff relied on *Sibley Memorial Hospital v. Wilson*, 488 F.2d 1338 (D.C. Cir. 1973), and while the Trial Judge reiterated that *Sibley* held that the Act reaches beyond the context of direct employment, he concluded:

> In *Hill v. New York City Board of Education*, 808 F.Supp. 141 (E.D.N.Y. 1992) the plaintiff, a black male, employed by an independent contractor as a bus driver was decertified by the Board, and later fired by the contractor.
>
> The Court gave short shrift to his claim that he was an employee of the Board, saying . . . ?this argument ignores the fundamental predicate of Title VII liability - the existence of an employment relationship between the one who discriminates against another and that other who finds himself the victim of discrimination.?

With due deference to the Trial Judge, the *Hill* Court's holding is in accord with *Sibley*, and employed the so-called ?economic realities? test set forth in *Sprit v. Teachers Insurance and Annuities Association,* 691 F.2d 1054 (2nd Cir. 1982), vacated 463 U.S. 1223 103 S.Ct. 3565, 77 L.Ed.2d 1406 (1983), on remand 735 F.2d 23, 2nd Cir. Cert. denied 469 U.S. 881, 105 S.Ct. 247, 83 L.Ed. 185 (1984), to hold:

> ?Under *Sprit*, it is clear that the Board of Education was a 'Title VII employer' in this case. The Board had the exclusive power to certify plaintiff to drive on Board of Education routes, and, because Amboy did business only with the Board, such certification power was tatamount to a 'veto'

all records of juvenile and probate cases where within the special jurisdiction of the County Court . . . .

3

power by the Board over plaintiff's employment.? *Id.* at 148.

A complaint will be dismissed for failure to state a claim upon which relief may be granted, only if after taking the allegations of the complaint as true, there is no set of facts under which plaintiff would be entitled to relief. *Lewis v. Allen*, 698 S.W.2d 58 (Tenn. 1985); T.R.A.P. 12.02(6). Our review of the Trial Judge's action in this case is *de novo* with no presumption of correctness, since the issue is a question of law. T.R.A.P. Rule 13(d).

THRA states that it is a discriminatory practice for an employer to:

> (1) Fail or refuse to hire or discharge any person or otherwise to discriminate against an individual with respect to compensation, terms, conditions or privileges of employment because of such individuals' race, creed, color, religion, sex, age or national origin . . . . T.C.A. §4-21-401(1).

?Employer? is defined as including ?the state, or any political or civil subdivision thereof, and persons employing eight (8) or more persons within the state, or any person acting as an agent of an employer, directly or indirectly.? T.C.A. §4-21-102(4).

Our courts interpret THRA in accordance with its parallel federal version, Title VII. *Bruce v. Western Auto Supply Co.*, 669 S.W.2d 95 (Tenn. App. 1984). *Also see* 906 F.Supp. 441 (E.D. Tenn. 1995) (THRA and Title VII should be similarly construed, since both have the same purpose.)[3]

---

[3]T.C.A. §421-101(a) provides:

> It is the purpose and intent of the general assembly by this chapter to (1) Provide for execution within Tennessee of the policies embodied in the federal Civil Rights acts of 1964, 1968

4

Federal Courts have interpreted Title VII's definition of ?employer? to reach beyond the entities which literally write an employee's pay check. Since the Act did not define ?employee?, the Courts have looked to the National Labor Relations Act for guidance in ascertaining legislative intent. *Arbruster v. Quinn*, 711 F.2d 1332, 1341 (6th Cir. 1983).

The ?economic realities test? employed by Federal Courts has established a flexible standard that tends toward inclusion of a broad number of workers under the protection of the Act. *See e.g., Real v. Driscoll Strawberry Association, Inc.*, 603 F.2d 748, (9th Cir. 1979), *Luther v. Z. Wilson, Inc.*, 528 F.Supp. 1166 (S.D. Ohio 1981). The economic realities test for employee status has been developed by the cases focusing on the ability of employers and others to control access to employment opportunities, the terms and conditions of employment, and whether the alleged employee under the circumstances is subject to the effects of unlawful discrimination.

The first case to take this approach was *Sibley*, where the hospital argued that because there was no employment relationship between the plaintiff and the hospital, the plaintiff had no cause of action. The Court, however, focused on the economic realities of the relationship and concluded that the formal relationship between the plaintiff and the hospital did not control, rather the issue being whether the hospital had the power to affect the plaintiff's employment.

---

and 1972. . . .

5

The Court in *Arbruster*, in adopting the economic realities test, said that it would examine whether the employer was in a position to affect the ongoing working conditions of the employee, and concluded that congress intended to protect all workers from discriminatory practices, unless such workers were excluded by specific statutory exception. The Court said ?that the term 'employee in Title VII must be read in light of the mischief to be corrected, and the end to be attained.' 322 U.S. at 124, 64 S.Ct. at 857 (citations omitted).? The most important factor in this test is the employer's ability to control the job performance and employment opportunities of the plaintiff. *Eyerman v. Mary Kay Cosmetics*, 967 F.2d 213, 219 (6th Cir. 1992).

Here, plaintiff alleges that Lanier had the authority to hire, discipline, promote, demote, or terminate all juvenile court employees, including secretaries and juvenile officers. She alleged that Lanier, in retaliation for the rejection of his sexual advances, demoted her from her supervisory position. She alleged that Lanier denied her an increase in salary and unilaterally changed her job requirements and responsibilities on a week-to-week basis. Taking the allegations of the complaint as true, she has demonstrated that Lanier directed her work, supervised her assignments, controlled her salary, and determined her job security.

These allegations meet the elements of the common law test of control which asks whether the alleged employer had the right to hire, fire, supervise, and set the work

6

schedule of the employee. *Deal v. State Farm Mutual Insurance Co. Of Texas*, 5 F.3rd 117, 119 (5th Cir. 1993). These allegations also meet the requirements of the ?economic realities? test, which asks whether the employer set the terms and conditions of employment and controlled the job performance and opportunities for advancement. *Arbruster; Eyerman and Deal*.

In the case of harrassment by a supervisor, an employer is responsible for the actions of its agent, *Pierce v. Commonwealth Life Insurance Co.*, 40 F.3d 796 (6th Cir. 1994), *citing Kauffman v. Allied Signal, Inc., Autolite Div.*, 970 F.2d 178, 183 (6th Cir. 1992)(holding that the ?knew or should have known? standard does not apply to sexual harassment cases); *also see* 29 C.F.R. 1604.11(c) (?Applying general Title VII principles, an employer . . . is responsible for its acts and those of its agents and supervisory employees with respect to sexual harassment regardless of whether the specific acts were authorized or even forbidden by the employer and regardless of whether the employer knew or would have known of their occurrence.?). Agency is determined by examining factors such as when the act took place, where it took place, and whether it was forseeable. *Yates v. Avco Corp.*, 819 F.2d 630, 636 (6th Cir. 1987). An act may be within the scope of employment even if it is specifically forbidden. *Id.*, citing Restatement (Second) of Agency, §217-232 (1958).

Lanier's authority for presiding over the County Juvenile Court was based on an act of the state legislature.

7

1972 Public Acts 1676-1680, ch. 863. Plaintiff's complaint alleges that the State willfully failed to adequately supervise, monitor, or discipline Judge Lanier, even after he became the subject of a federal investigation.[4] Taking these allegations along with those regarding his supervisory control of the Juvenile Court as true, we cannot say the plaintiff can prove no set of facts which would entitle her to relief against the State. *See Pierce.*

At first blush, the State made an appealing argument that it should not be considered an employer because it is not in a position to grant all the statutory relief the plaintiff was entitled to under the Act. This argument was answered in *Sibley*, where the Court said:

> Appellant argues that this provision ?concerns relief that only an employer can give to its employees?. The statutory ennumeration of remedies is by its terms, however, illustrative rather than exhaustive; and it also reaches explicitly beyond the context of direct employment to employment agencies and labor organizations. While neither hiring nor reinstatement may be relevant outside the context of direct employment, both injunctive and back pay relief (in the sense of monetary damages for lost employment opportunities) may be available, in an appropriate case, against respondents who are neither actual nor potential direct employers of particular complainants, but who control access to such employment and who deny such access by reference to invidious criteria.

488 F. 2d 1342.

We conclude that the elements of a THRA claim have

_____

[4]Lanier was an elected State official, and the County could exercise no control over his conduct. However, through State action the Court Of The Judiciary had jurisdiction over Lanier's conduct as a judge, T.C.A. §17-5-101, *et seq.,* and the Supreme Court in 1993 established procedures to deal with sexual harrassment in the judicial department. *See* Administrative Directory 93-5.

been alleged against the State, and the Trial Court's judgment is reversed. The cause will be reinstated to the Trial Court's docket for further proceedings consistent with this opinion.

The cost of the appeal is assessed to appellee.


_____
Herschel P. Franks, J.

CONCUR:



_____
William F. Crawford, P.J.(W.S.)



_____
David R. Farmer, J.

9